## No. 8212.

### H. McKNIGHT VS. A. V. RAGAN.

The Courts have undoubtedly the right to inquire into, and pronounce upon the validity of the returns of election.

As decided by this Court in the case of Duson vs. Thompson, 32 An., 861, irregularities in election returns do not *per se* vitiate the election ; and in default of such legal returns, extrinsic evidence should be resorted to, in order to ascertain and decree the real result of the election.

The sworn officers charged by the law with the returns of election, are presumed to perform their duties with fidelity and honesty, and this presumption can only be overcome by positive evidence and not by mere suspicion of fraud.

APPEAL from the Twelfth Judicial District Court, parish of Grant. *Barbin*, J.

---

*R. J. Bowman* for Plaintiff and Appellant:

The dissolution of the plaintiff's injunction on the ground that one claiming to be an officer could not be enjoined from drawing the salary because salaries of officers could not be seized, is a legal absurdity, there being no analogy between the two.

The refusal of the sheriff to permit the plaintiff and his attorney to see the commissioner's returns, his failure to file a copy in the clerk's office, his refusal to permit any one within the bar to witness the tabulation made, the failure to enclose copies of the commissioner's returns to the Secretary of State, the final disappearance and destruction of all the tally-sheets, and the selection of the warm partisans of the defendant to make the tabulation, are conclusive evidence of concealment and secrecy.

It is impossible to believe that violations of law—the withholding of the returns from the clerk's office, from the Secretary of State, their immediate disappearance and destruction after the pretended tabulation was finished, and the outrageous refusal to permit the defendant or any of his friends to see or examine the returns or witness the tabulation, except at a distance from which they could not see or hear, the low conversation of the tabulators—would not have been resorted to, if the returns would have shown that the defendant was elected, without exhibiting changes and alterations made upon them.

The cause of this secrecy and concealment, and destruction of the returns, is fully explained in the testimony of the plaintiff, which proves that the plaintiff was elected by thirty-six majority.

This testimony is uncontradicted, except by the negative testimony of the very parties who were engaged in this game of secrecy or concealment, and who studiously and carefully prevented others from seeing that which they did not see, and the casuistry of whose testimony bears the construction that the alterations and changes of the tally-sheets were so skillfully made, that they did not show, to a casual examination, and especially to the examination of those whose part of the contract was not to see.

With all the insignia of fraud thrown over the defendant's election by the plaintiff, the burden of proof was upon him to remove it, which, if untrue, he could have readily done by the hundreds of citizens who attended the election.

*A. Cazabat, W. L. Richardson, E. G. Hunter* and *J. G. White* for Defendant and Appellee:

The ordinary rules of evidence apply as well to election contests as to other cases. The evidence must, therefore, be confined to the point in issue, and must be relevant. The burden of proof is always upon the contestant, or the party attacking the official returns or certificate. The presumption is that the officers of the law charged with the duty of as-

certaining and declaring the result of an election, have discharged that duty honestly, faithfully and truthfully. McCrary, American Law of Elections, sections 306 and 440.

The returns of a vote made in due form, and signed by the proper officers, is the best evidence as to the state of the vote. And the returns must stand as the true and correct result of that vote, until it has, under proper proceedings supported by relevant and legal testimony, been clearly and indisputably shown to be false or fraudulent. McCrary, sections 436, 437 and 438.

The best evidence of the true and correct state of a vote of a given parish, are the sworn official returns made in due form by the sheriff or local returning officer of that parish; and the next best evidence of that vote is the ballots in the boxes, where the boxes are shown to have been kept in the custody of the proper officer, and no· proof has been adduced showing them to have been tampered with. And the next best evidence of that vote, when neither official returns nor the ballots are in existence, is the parol testimony of the legal voters of the precinct, showing for whom they voted. But this last species of testimony is not competent when the ballots are in existence, and where there is no allegation and no proof that they have been tampered with. McCrary, section 439; Acts 1877, No. 58, section 45, page 98.

Parol testimony of third persons, or the commissioners of election themselves, where their returns are signed and sworn to without any protests, is not competent to vary, change or modify the result of the vote ascertained and tabulated by the sheriff or local returning officer of the parish, and where it is shown that his tabulation has been made up exactly from the said returns.

The opinion of the Court was delivered by

LEVY, J. This is a contest for the office of parish judge of the parish of Grant, and for the second time is before this Court on appeal from judgment rendered on a verdict of jury in favor of defendant. On the first appeal the case was remanded to the court *a qua* for the reasons that the record did not contain the original tally sheets required to be deposited with the Secretary of State, which the contestant charged had been forged or altered, and no proof of their non-existence had been made, which was necessary in order to the admission of secondary evidence as to alteration or forgery. On the second trial in the lower court, it was proven that these sheets had not been received by the Secretary of State, and had not been deposited in that office and the loss or non-existence of them was established. There was a second verdict and judgment in favor of defendant, and plaintiff again appealed. There can be no discussion of the right of the courts to inquire into and pronounce on the validity of the returns of the election. 31 An. 289.

Plaintiff alleges that at an election held in the parish of Grant, on November 5th, 1878, upon a fair count of the votes cast, he was fairly, legally and duly elected to the office of parish judge, receiving a majority of thirty-five over his opponent, the defendant herein ; that notwithstanding this, and the votes at the various precincts in the parish having been announced by the different commissioners at the precincts as aggregating 463 votes for McKnight and 428 for Ragan, as appeared by the tally sheets, the same were changed and fraudulently altered so as to give Ragan a majority, and the returns of the returning officer,

the sheriff of said parish, were fraudulent, and by change, alteration, substitution and manipulation of the true vote by the returning officer and certain confederates. Ragan was returned as elected, so as to cheat McKnight out of said office. Plaintiff prayed for judgment in his favor decreeing him to be entitled to said office, with all the emoluments and salary thereof.

Defendant in his answer denied all the allegations in plaintiff's petition, and averred that he, Ragan, had been duly elected to said office at said election; that he had been duly commissioned therefor, and was exercising the functions of said office.

Sworn officers are presumed to perform the duties imposed upon them by law with fidelity and honesty, and this presumption can only be overcome by positive evidence, and not by suspicion or vague charges not directly sustained and conclusive as to fraud, dishonesty or dereliction of duty.

In the case of Duson vs. Thompson, 32 An. 861, the principles on which this case must be decided are enunciated in the concurring opinion of Justice Levy, in which there was the concurrence of three other members of the Court. In many of its features, and indeed in the essential one here involved, that case bore great similarity to the instant one, and the doctrines there laid down are applicable to this. We quote from the opinion as follows : "While the law points out certain formalities to be observed as to the returns of the commissioners, a failure to comply with its directions does not, *per se*, vitiate the election, and if there are means by which the true vote can be ascertained, such means must be resorted to by the court before which the contest is pending.     *     *     *     *     If irregularity in the returns or errors of form therein cannot be explained by extrinsic evidence, and irregularity and error are fatal defects, which operate to vitiate the election, it would follow by logical reasoning, that when the returns are regular in form they will be conclusive, and being on their face correct, they cannot be attacked.     *     *     *     *     *     *     *     In this case the issues as to the regularity or irregularity of the returns being before the court, the allegations of fraud, error, etc., being also made and evidence on that score introduced, the court had the right and properly resorted to the means of determining the true vote cast at the Leonville poll by opening the ballot box and counting the ballots. To justify this, and to entitle the ballots to consideration as evidencing the true vote, it was necessary to prove that the box containing them had not been tampered with, that its contents were the same as when sealed and closed by the commissioners, and the requirements of law as to its custody and preservation had been complied with. The ballots in this box were counted in court in the presence of the judge and the jury. This

count showed a different result from that set forth in either the statements or returns, or in the returns of the recorder. The question then was to be decided whether the recorder's return (the sheriff being a candidate, the recorder was the proper returning officer), based upon these statements of the commissioners, was the true return of the votes cast at the poll, and did the ballot box contain the ballots as cast by the voters of that poll, and had it or not been tampered with. * * * The testimony shows that the box was in the custody of the proper officer and his deputies, and the presumption that officers perform their duty under the maxim " *omnia presumuntur rite acta,*" is fortified by their positive testimony that the box had not been tampered with, and that it was produced and opened in court, on the trial of the case, just as it was received by them from the commissioners. * * * * ·I cannot allow mere surmises and vague suspicions, unsupported by positive testimony or substantial facts, to outweigh the evidence which has convinced me."

The evidence in the record of this case fails to satisfy us that the ballot boxes were tampered with, and we can find no error in the verdict and judgment.

The judgment appealed from is affirmed with costs.