Statement of the Case.
MONROE, J.
Plaintiffs, as citizens and taxpayers in the parish of Rapides, allege that under an ordinance of the police jury an election was held upon September 30, 1902, submitting to the property taxpayers within the Cheneyville school district the question whether a 5-mill tax for 13 years should be levied on the property in that district for the purpose of purchasing ground and erecting a school building, and that the commissioners have made a return to the effect that the election resulted in favor of the tax by 8 in number and $12,000 in amount, but that all the votes cast for the tax were illegal, for the reason that the tickets were in blank, so far as the amounts were concerned, and the amounts were filled in after the election and count, after the returns had been signed and the box sealed by the commissioners, and out of their presence, at another place and time, and that the only votes stating the amounts were cast against the tax.
They further allege that nine minors, whom they name, were allowed to vote for the tax, that four nonresident women taxpayers, whom they name, owners of property assessed at $17,055, and duly represented, were denied the right to vote; and that, if the errors thus mentioned, or either of them, be corrected, the tax is defeated. They pray that the returning officers, whom they make defendants, be enjoined from promulgating the result of the election as declared by the commissioners, that the police jury be enjoined from levying any tax pursuant thereto, and that there be judgment decreeing the result of said election to be unfavorable to the tax and perpetuating the injunction. A preliminary injunction having been issued as prayed for, the defendants answered, denying the allegations of plaintiffs’ petition, except as admitted, and admitting that four of the minors named by the plaintiffs, and representing an aggregate of $80, were allowed to vote, and that their votes should he stricken out, and the amount stated deducted. They allege that the nonresident women taxpayers mentioned by plaintiffs did not offer to vote in person or by proxy, and that, if they had done so, their votes could not have *850 been received, for the reason that the Constitution requires that women taxpayers voting at such elections shall have the qualifications of age and residence. They further allege that several women (whom they name) voted against the tax on amounts specified, though they owned no property save that which belonged to the communities existing between themselves and their respective husbands; that one woman so voted on a property qualification of $10, who owned no property; that two other women, who were not assessed, voted against the tax on no property valuation, and that one man so voted who did not possess the requisite qualifications as to registration and residence. They affirm the validity of the election, and pray for judgment.
Of the nine persons described in the petition as minors, it is admitted that five have attained the age of majority, and that the other four, representing property to the amount of $80, were subject to the disqualification charged. The allegations of the answer as to illegal voting by women are not substantiated by the proof, but it appears that the man referred to in the answer had left the parish a few years ago, and had only returned in January, 1002, and the judge a quo concluded that his vote should be stricken out.
It is shown that of the ballots cast for the tax only two specified the value of the property owned by the voter, the aggregate amount being $570, and that there were 64 ballots cast against the tax upon which there were property valuations aggregating $83,687. It is also shown that after the closing of the polls on the day of the election the three commissioners counted the votes and prepared one tally sheet, upon which, however, no property valuations were entered, save, possibly, where such valuations appeared on the ballots. At that stage of the proceedings the tally sheet so prepared was •signed, and two others were signed in blank, and one, and probably two, of the commissioners retired. Those who remained — that is to say, the third commissioner, the clerk of the election, and one or two other persons— then proceeded to enter property valuations where none appeared opposite the names of the voters on the tally sheet first above mentioned, and it may be that they prepared á second sheet in the same way. There is a conflict in the testimony of the defendants’ witnesses on that subject. However that may be, it is quite certain that the third sheet was not filled up at all, and that, a question having arisen as to the amount which should be placed opposite the name of one of the voters, whether upon one sheet or upon all of them, it was decided to postpone further action until the next day. The tally sheets, In their then condition, were accordingly placed in the ballot box with the ballots, but the witnesses say the box was not fastened or sealed, and the following day the commissioners making no appearance, the clerk, with the aid of another person — an outsider, apparently — opened it, and proceeded to complete the work by supplying the particular valuation referred to (which they obtained by telephone from the voter himself), and by filling up the third sheet. It further appears that the valuations so entered upon the tally sheets by the commissioners and other persons were not taken from the then existing assessment rolls, but were taken from a pro-jet of an assessment which was thereafter to be made, which projet one of the commissioners, who was also a deputy assessor, had in his possession. Whether, or to what extent, that projet was subsequently adopted as the basis of the final assessment, does not appear, since the defendants, although they offered the assessment rolls as afterwards completed, did not file them in evidence, and they are not in the transcript.
There was judgment in the district court, in the main rejecting plaintiffs’ demands, and they have appealed.
Opinion.
We agree with the judge a quo that neither the Constitution nor the law contemplates that nonresident women taxpayers shall vote. In cases such as this, where women are permitted to vote, they must possess the same qualifications as men, save that of registration, though they may vote by proxy. Const. art. 197; Act No. 131, p. 200, of 1898, § 4. We also agree with our learned Brother that a married woman is entitled to vote in such cases upon property assessed in her name, where it is not shown that it was acquired during the existence of the community; and in his ruling upon the other *852 questions presented, save that relating to the supplying of the amounts and the manner in which the commissioners discharged, or failed to discharge, their duties.
It is quite true that article 232 of the Constitution and Act No. 131, p. 200, of 1898, in providing for elections such as that here in question, do not specifically require that the amount of the assessment or property valuation upon which the taxpayer votes shall be expressed upon the face of his ballot, but both the Constitution and the statute referred to, as 1 also the general law of the state (Act No. 152, p. 266, of 1898), under which such elections are required to be held, contemplate (except in the case of women taxpayers, who may vote by proxy) that each elector shall do his own voting, without advice, suggestion, or interference from the commissioners or other persons; and yet in the instant case, although the result depended as much upon the amount as upon the number of the ballots, not only did the voters have no voice in the matter, but it is certain that one of the commissioners did not participate therein, it is doubtful whether another did, and it seems probable that the fixing of the amounts voted by the different electors -was left to the third commissioner, the clerk of the election, and certain other persons whose interference is not explained, there being nothing to show that the voters, or any of them, know to this day upon what property basis their votes were cast. More than this, it is impossible to say that the amounts thus attributed to the different voters without their knowledge are even approximately -correct, since a mere pro jet, in the hands of a deputy assessor, of an assessment yet to be made, and which is to be the subject of objection, correction, revision, and possible litigation before it can become final, is of no possible authority.
Act No. 5, p. 7, of 1899, which relates to special elections to be held under article 281 of the Constitution for the levying of taxes for other public purposes than the establishment of schools, provides: “Sec. 6. * * * That it shall be the duty of the registrar of voters to furnish the commissioners appointed to hold such elections with the lists of tax-payers entitled to vote in person or by proxy at such elections, together with the valuation of each tax-payer’s property as shown by the assessment roll-last made and filed prior to such election: provided that, when any tax-payer’s name- and valuation of property shall be omitted from such list or erroneously entered thereon the commissioners of election shall have authority to receive affidavits of such taxpayer’s right to vote and of the proper assessed valuation of his property, which affidavit shall be attached to such tax-payer’s-ballot.” Acts 1899, p. 9, No. 5.
It is, of coutse, understood that this statute does not govern the instant case. Nevertheless, the reason which underlies it is as-applicable here as to the cases for which it is especially intended, since the right túvote at all is as much dependent upon the ownership of property as in the cases provided for by the statute quoted. In other words, in this case, as in those, the elector must cast two votes or none, or, rather, he must show that he is qualified to cast a vote-which is to be counted in dollars and cents of assessed property, and also a vote that is to be counted numerically, or else he cannot vote at all; and, as it is just as much his-exclusive function to cast the one vote as the other, it is by him, or at least by the-public records, and certainly not by the commissioners of election, that the amount of his pecuniary vote should, primarily, be determined. Beyond these considerations, the evidence discloses a very wide departure from the general election law in the matter and manner of compiling and returning the result of the election in question, and, whilst no fraud is imputed to any of the parties-concerned, our conclusion is that in the interest of justice, and from a proper regard for the principles of the government under which we live, that result should not be-allowed to stand.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment decreeing that the result of the election held in the Oheneyvilleschool district, in the parish of Rapides, upon the 30th day of September, 1902, was unfavorable to the levying of the special tax as-proposed, and it is further' adjudged and decreed that the preliminary injunction herein issued be made perpetual; the defendants-to pay all costs.