(36 South. 681.)

No. 15,093.

ENDOM et al. v. CITY OF MONROE et al.

(April 25, 1904.)

MUNICIPAL IMPROVEMENTS—ASSESSMENTS—SPECIAL ELECTION—CONDUCT—RIGHT TO VOTE—CORPORATE SHAREHOLDER—REGISTRATION OF VOTERS — CONSTITUTIONAL LAW—CONSTRUCTION.

1. No election is vitiated under statute for holding special election by failure to open the polls on the time prescribed on account of the temporary absence of the commissioners of election during the day, unless on a contest it be shown that voters were thereby deprived of their votes in number and amount sufficient to change the result of the election. Commissioners should not leave the polling precinct. In this instance their absence was not prejudicial.

2. The voter must present his ballot to the commissioners at the ballot box, and not attach undue importance to the utterances of those who meet him on the street, and say to him that his vote will not be received, and stay away and fail to offer to vote. Non constat, had he offered to vote, that the commissioners would have declined to receive his vote.

3. The owner of shares of stock in a bank assessed within the limits of the city, which is owned by a resident taxpayer, is authorized under the statute to vote them.

4. The agent of a voter should exhibit his proxy to the commissioners. The commissioners cannot dispense with its production. It is made a sine qua non prior to receiving the vote; otherwise the commissioners might waive the proxy entirely, which is not within the contemplation of law.

5. The survivor in community, whose interest in the "community" is judicially established, can vote at a special election. If not clearly established, the vote shall not be received. Commissioners of election cannot pass upon the right of the survivor in community, not settled, in order to determine whether he or she should

vote. The community interests were properly excluded, as they were not separated from "succession" interests.

6. The usufructuary is not a property taxpayer, and he therefore cannot vote at a special election.

7. The taxes can be voted for or against, without specifying with close particularity the amount to be expended for each of the improvements contemplated. Gray v. Tax Collector, 32 South. 42, 107 La. 671.

8. Laws relating to registry must be complied with, and election should not be held without giving to all voters the opportunity to register. The failure to open the registration office as required by the town charter was fatal to the election. The city charter required the registration prior to election.

9. Article 281 of the Constitution, limiting amount of taxes imposed to five mills, has no application to article 232 of that instrument, in which no such limitation is written. Each article must be construed separately, and a limitation cannot be read where none was inserted. The city of Monroe had not exhausted its power of taxation under article 232, and the election would have been legal if the limitation invoked had been plaintiff's exclusive ground.

(Syllabus by the Court.)

Appeal from Sixth Judicial District Court, Parish of Ouachita; Luther Egbert Hall, Judge.

Action by Fred Endom and another against the city of Monroe and another. From a judgment for defendants, plaintiffs appeal. Reversed.

Percy Sandel and Francis P. Stubbs, Sr., for appellants. Andrew Augustus Gunby, in pro. per. Henry Hamilton Russell, City Atty., and Hudson, Potts & Bernstein, for appellees.

BREAUX, C. J. The petition of plaintiff sets forth at some length that the election held in the city of Monroe on the 22d day of July, 1903, was null and void, because of asserted illegalities and frauds committed. The purpose of the election was to determine whether the property taxpayers would authorize and direct the mayor and city council to levy and assess annually for a period of five years a special tax of five mills on the dollar upon all the taxable property subject to taxa-

tion, for the purpose of constructing a city hall, city market, city prison, and engine house.

Subsequently the city council and mayor proclaimed the result, showing that 180 voters voted for the tax and 98 against; that the amount of property represented by the voters for was $365,470, those represented by the voters against was $304,905. The mayor and council officially declared and proclaimed that the election had been carried for the tax.

The assessment of the city of Monroe for the year 1903 amounted to the sum of $2,-651,920. It appears that the value of property is increasing, and the taxes for the five years will amount to about $70,000.

Plaintiffs charge that the election was null, because, as they contend, officers of election, on the day appointed for holding the election, failed to open the polls at the required time, and that numerous voters were thereby deprived of their vote; that the officers of election left the ballot boxes, and poll lists in charge of unauthorized persons; that the officers of election denied to persons duly qualified the right to vote; that names had purposely not been placed on the poll lists; that voters were influenced to vote by the hope of favor and others through threats; that the returns of elections were not timely filed in the clerk's office; and that a large majority of the property taxpayers of the city of Monroe were opposed to the tax.

Plaintiffs inveigh against all the different steps taken by defendants at the different polls in connection with the election. They urge that they were all wrong, and a positive denial of their rights as taxpayers (not to use the strong averments of the complaint).

The general averments were broad enough to admit all the evidence tendered, which, from our point of view, is needful to the decision of the case.

We take up for the purpose of review the particular charges brought against the election as held at particular voting wards and precincts.

1. There are six wards in the city, and there was a polling booth opened in each of the wards. The election does not appear to have been conducted so as to afford grounds for special complaint.

It is specifically charged by plaintiffs that the officers of the election absented themselves from the polls at various times during the day and that by reason of that fact many persons who would have voted against the tax were denied that right. This charge is not sustained by the testimony in its entirety. True, the officers left the polls, but it does not appear that any one in consequence lost the right to vote. It is asserted that nearly all the commissioners at all the polls were at fault in this respect. Our conclusion regarding this poll is equally as well founded in regard to all the commissioners of all the polling precincts. If the majority of the commissioners absented themselves at different times, it does not appear that any votes were lost on that account. They should not have left as they did, but, under the circumstances, their absence, as before stated, affords no good ground to set aside the election.

2. It is charged, in substance, by plaintiff, that three qualified voters named in the petition were not permitted to vote in the Second Ward. This objection, relating to a woman taxpayer, named, who offered to vote in this ward, does not appear to have been pressed. We infer that she voted by reason of the fact that some reference is made to the ballot cast by her agent in her behalf.

Another of the taxpayers in this ward—Mauser—did not vote because he was told (as he says) "by the mayor, away from the poll, that he had no right to vote"; that he "should not make any attempt to vote." It goes almost without saying that a voter must tender his ballot or ticket to the commissioners if he really desires to take part in the

election, and be heard before the court in case he is not permitted to vote. The mere conversation on the street cannot enter into and form part of a judicial controversy such as that here.

We repeat, the proper place to assert the right to vote is at the polls.

We will not go over the same ground to consider the case of the third alleged voter —Goldman—the partner of Mauser, who did not give himself the trouble to go to the polls and attempt to vote. It is substantially the same as that of Mauser.

3. This brings us to the special charge of plaintiffs against the election held in the Third Ward.

The first charge grows out of the refusal by the commissioners to permit an asserted female taxpayer, Mrs. S. R. Ruffin, to vote against the tax through her agent.

Her residence was with her husband, who is manager of a plantation—the Pargaud— about a mile from the city. She was not a resident of the city. She frequently came to Monroe, where she owns property. Her home is on the plantation. "Nonresident taxpayers shall not vote at a special election." Bennett et al. v. Staples et al., 110 La. 850, 34 South. 801.

Another objection of plaintiffs is that the members of the firm of Sugar Bros. were not permitted to vote against the tax in this ward.

It is quite true, as held by the learned judge of the district court, whose judgment sustained the commissioners in having refused to allow the members of this firm to vote, that "partnerships," "corporations," and "estates" are not included among voters under the terms of the law.

None the less, we take it that, as relates to these parties, the landed property was not owned by the firm, but by the partners, who held it in common. If that be the case, then each owner should have been permitted to vote to the extent of his interest in the realty

in indivision. Joint owners represent an interest subject to taxation in the name of the owner to the extent of his interest. He is a property taxpayer to that extent. We understand that the property was not owned by the individuals of "Sugar Bros.," but by the partners as joint owners.

4. This brings our examination to the next ward in the order they are numbered, and to the special irregularities alleged by plaintiff as having been committed at the polls.

We will consider the case of the property taxpayer Mrs. Garretson, the first brought to our attention in this ward.

We infer that as to part of the amount which the agent of Mrs. Garretson desired to vote a misunderstanding arose between him (the agent) and the election commissioners. He offered to vote all the property—that held in indivision by his principal, Mrs. Garretson, with her children, and that owned by her individually.

After considerable talk, it ended by the commissioners' refusing to him the right to vote at all.

There are differences in the statements of the parties, which we will not consider. Taken as a whole, it seems to us that to the extent that she owned separate property the vote should have been received; the amount to which she was entitled in her own right was $1,000.

5. We pass to a consideration of issues relating to the election in the Fifth Ward. They relate mainly to the women taxpayers, whose proxies were not permitted to vote. We will hereafter consider the question to which that refusal gave rise.

6. C. E. Bynum, the owner of a small block of bank shares assessed in his name, was not admitted to vote. This vote, we think, should have been received and counted. He is liable for the taxes, and not the bank, against whom they are held. They are the property of the shareholder. The tax statute enacted in the year 1898 in direct terms provides that shares

in banks "shall be assessed in the name of the owner and holder." The assessor has no authority to assess them in the name of the corporation. Property should always be assessed in the name of the owner. The amount of these shares was valued by the assessor at $2,024.74. The owner of this stock resided in the ward. The stock was assessed in Monroe. We cannot imagine why he should not vote the amount of these shares.

7. In the Sixth Ward a taxpayer, Mrs. Genie Layton, temporarily absent, sought to vote through her agent. Her power of attorney was not presented to the commissioners. A ballot was presented by the agent, and a telegraphic dispatch only. The dispatch was not the best evidence. It is perhaps unfortunate that the commissioners chose to exclude this vote without calling for the letter of authorization held by the agent. None the less, this letter was not mentioned at the time the agent proffered the ballot. To fix the right of the voter to be heard in a contested election, its production was needful. It devolved upon the agent to produce the letter. Commissioners could not waive the production of a proxy either directly or by the effect of a ruling they chose to make to the effect that the authorization was sufficient. The sufficiency of the proxy must be made to appear by its production at the polls. Her name was not on the poll list at all. We are not inclined to the view that she was entitled to vote.

We take up the question of community property, and property held in usufruct, and whether the vote of the interest of both or either should be received in a special election.

Certain taxpayers named in the petition owned property in community and property of which they claimed to be usufructuary. Upon this question we are confident that, where the survivor has a well-defined right as survivor in community, to its extent—that is, to the extent that the survivor is owner of the community—her vote or his vote should not be excluded. This, in order that such survivor may vote, should be made to appear by judgment or order of court of no uncertain meaning. Here the properties were assessed in the name of the respective successions by which it was owned. The successions were unsettled. It would be expecting too much of commissioners of election to expect them to fix the amount of the community interests of the voters. Hence we think that the community interest, where it was unsettled and its extent was entirely unknown, was properly excluded.

We understand that no interests in "communities" was considered. It was taken for granted by the commissioners that it was a proper subject for exclusion, and that refusal was sustained by the court, and no testimony was heard.

The ruling of the court a qua on this point was correct.

The commissioners cannot be expected to investigate intricate legal questions to determine whether or not a vote should be received.

Conclusive evidence should have been produced. No such evidence was presented for admission before the district court.

We come to a consideration of the right of usufruct of the survivor in community.

The "property taxpayers" are to vote at a special election. By this is meant the owners of the property assessed.

The usufructuary with perfect usufruct does not acquire title to the property. Civ. Code, art. 535.

The imperfect usufruct only acquires the title. There is no question here of imperfect usufruct.

Although it is well settled by law that the usufructuary owes the tax on the property subject to his usufruct, this is not sufficient to enable the usufructuary to vote, for he is not a "property taxpayer." He does not own the property.

After deducting the votes excluded without legal cause, there would still remain a majority of voters legally cast in number and amount of property represented to sustain the election.

8. Plaintiffs urge that the law requires a registration before an election, and that the election was not preceded by a registration prior thereto.

The charter of the city of Monroe requires a registration of voters "thirty legal days prior to any city election."

The registrar's office was opened prior to an election for mayor, which was held on the 6th day of May, but the office was not opened prior to the special election held on the 22d of July.

Defendants' able counsel in his brief states "that the last registration was that made for the purpose of holding the election of municipal officers, and all former registrations were superseded by it."

The testimony shows that two of the taxpayers had not registered. There may have been others, for all we know.

The provisions of law should be strictly followed. The steps laid down to be pursued are intended for the protection of all concerned. We consider that this election fell as much within the terms of the statute as any which can be held. If the registration can be overlooked in this instance, then it can be passed without notice in every election.

The taxpayer should be given every reasonable opportunity under the law to qualify himself to vote for or against the question presented as in this case.

The authorities cannot suppress the voice and utterances of the citizens at the polls by (in any way) denying to them or curtailing the opportunity the statute contemplates they shall have to properly qualify to vote.

Another objection urged is that the ordinance does not specify how much of the tax shall be devoted to one or the other of the purposes designated. This point has been considered. With the light before us, we do not find reason to change the ruling heretofore laid down. Gray v. Tax Collector, 107 La. 671, 32 South. 42.

There are other questions involved—one, for instance, that the constitutional limitations had not been observed, by reason of the fact, as contended by plaintiffs, that article 281 was adopted for the purpose of covering all improvements by municipalities.

We are not inclined to that view. Each article as to. limitations must be interpreted of itself. We do not find the limitation in the article 232 for which plaintiffs contend. Article 281 seems to stand for limitations as relates to it alone. The city of Monroe, as relates to limitations in article 281, had not exhausted its powers to tax itself. We do not think this court can sanction the omission to open the registration office, and for that reason we must decline to affirm the judgment.

There are issues in the case, as made evident by our statement of the facts. We do not pass on them for the reason that those decided by us are sufficient to sustain our decree.

It is ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled, avoided, and reversed, and the election in question is declared null, void, and of no effect. Defendants to pay costs of both courts.

NICHOLLS, MONROE, and PROVOSTY, JJ., hold that a usufructuary upon whom the law imposes the obligation to pay the taxes is a property taxpayer within the meaning of the law. In other respects they concur in the opinion. They also concur in the decree.