(52 South. 122.)

No. 17,870.

SMITH v. PARISH BOARD OF SCHOOL DIRECTORS.

(March 28, 1910.)

*(Syllabus by the Court.)*

1. SCHOOLS AND SCHOOL DISTRICTS (§ 103*)— ELECTIONS — QUALIFICATION OF VOTERS — WIDOWS OWNING COMMUNITY PROPERTY.

Widows seeking to vote at an election under article 232 of the Constitution, as being owners of one-half of the property of the community between themselves and their husbands, must make their right as such appear by judgment or order of court of no uncertain meaning. Where the community interests are unsettled, and their extent unknown, their vote should be excluded. Endom v. City of Monroe, 112 La. 786, 36 South. 681.

[Ed. Note.—For other cases, see Schools and School Districts, Dec. Dig. § 103.*]

2. SCHOOLS AND SCHOOL DISTRICTS (§ 103*)— ELECTIONS — QUALIFICATION OF VOTERS — SPECIAL TAX ELECTION—INTEREST IN FIRM.

The individual members of a commercial partnership, one holding an interest of three-quarters and the other one-quarter, were allowed to vote at an election held under article 232 of the Constitution upon the firm's assessment, by dividing the assessment and each partner voting upon his pro ' rata interest in the firm. Their right to have so voted was challenged on contest of the election. *Held*, that the vote was properly allowed.

[Ed. Note.—For other cases, see Schools and School Districts, Dec. Dig. § 103.*]

3. SCHOOLS AND SCHOOL DISTRICTS (§ 103*)— QUALIFICATIONS OF VOTERS—SPECIAL TAX ELECTION· — PERSON HAVING SOLD PROPERTY.

A person appearing as owner on the assessment rolls, but who had sold the property at the time an election was held under article 232 of the Constitution, was not entitled to vote thereat.

[Ed. Note.—For other cases, see Schools and School Districts, Dec. Dig. § 103.*]

4. SCHOOLS AND SCHOOL DISTRICTS (§ 103*)— ELECTIONS—CONTEST—GROUNDS.

A party who contests the result of an election held under article 232 of the Constitution on specific grounds is limited to those grounds, and is not permitted, under an allegation "that other illegalities and irregularities than those set out would be shown on the trial of the case," to enlarge the grounds of contest.

[Ed. Note.—For other cases, see Schools and School Districts, Dec. Dig. § 103.*]

5. SCHOOLS AND SCHOOL DISTRICTS (§ 103*)— ELECTIONS — VALIDITY — ILLEGAL PROCEEDINGS NOT AFFECTING RESULT.

The result of an election held under article 232 of the Constitution will not be set aside because the commissioners of election received votes without proper evidence, when it is subsequently shown that the votes so received were legal votes. Conant v. Millaudon, 5 La. Ann. 542.

[Ed. Note.—For other cases, see Schools and School Districts, Dec. Dig. § 103.*]

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Action by Branch E. Smith against the Parish Board of School Directors. Judgment for plaintiff, and defendant appeals. Reversed and dismissed.

Andrews & Hakenyos, for appellant. Robert P. Hunter & Sons, for appellee.

## Statement of the Case.

NICHOLLS, J. Plaintiff in his petition alleges that the police jury of the parish of Rapides, on what purported to be a petition of certain taxpayers of said Forrest Hill school district of Rapides parish, did by its ordinance (a duly certified copy of which would be produced on the trial) order an election to take the vote of the property tax· payers, entitled to vote in such election, as to the levying of a special tax of five mills on the property subject to taxation in said Forrest Hill school district for ten years, the proceeds of said special tax to be ' used to erect a school building in said town of For-

rest Hill, to belong when built to the school board of the parish of Rapides; that commissioners to hold said election on said day were appointed; and that on said day, March 6, 1909, an election was held under and by virtue of said ordinance of the police jury of Rapides parish, and that subsequently, to wit, on the 10th day of March, 1909, the result of said election was canvassed and declared by G. A. Staples, president, William French, and John Andrews, registrar, who constituted the board of election supervisors of Rapides parish, as would be shown by a duly certified copy of their said promulgation of the result of said special election, to be produced on the trial of the case.

That according to said promulgation it was made to appear, according to the returns of said election as made, also by the commissioners of election who held said special election, that in numbers 23 qualified voters who voted at said special election voted for the said special school tax, and 13 voted against said tax; that as to the amount of property, $10,640 voted for the tax, and $7,905 voted against the said special tax, giving according to said promulgation a majority in numbers of 10 in favor of said tax, and a majority in amount of $2,735 in favor of said tax. That said tax would amount to more than $9,000.

That such was not the true result of said special election so held on said 6th day of March, 1909, as shown by the returns of the commissioners of election and the promulgation of said board of supervisors of elections for the parish of Rapides, for and because in the conduct and holding of said election a majority of the commissioners holding same permitted a sufficient number of persons who were not entitled to a vote at said election to vote; and he avers that said tax was really defeated as to the amount of property voted.

That during the holding of said special election at the town of Forrest Hill, held on the date and for the purpose above stated, the commissioners who had been appointed to hold the same, being favorable to and anxious for the carrying of said special election, permitted and committed the following named irregularities in the conducting of said special election, which, with others to be shown on the trial of this cause, were more than sufficient to have changed the result of said election, as declared by them, and as promulgated by the said supervisors of election, viz., $2,735:

(1) That they permitted persons to change their assessment, as shown on the assessment roll of the year 1908, as to the amount and valuation of property assessed to them, and to vote on affidavits as to the valuation of their property on proposed assessments for the year 1909, not then nor even yet made, contrary to law, and with a view of carrying the said election in favor of said tax, when they must have known that it would otherwise have been defeated.

(2) That the commissioners only permitted persons whom they knew would vote for said tax to vote on such affidavits and to change their assessments, and refused to allow others, whom they knew to be opposed to said tax, to change their assessments as shown by the tax roll, or to vote at all by making affidavits.

(3) That the said commissioners deducted $1,800 from his (petitioner's) assessments as shewn by the tax roll, which was $5,400, and allowed him to vote against said tax only the sum of $3,400, and refused to him the privilege of making any affidavit as to the valuation and stipulation in that school district of property valued at $9,000 for the assessment roll of 1909.

(4) That the said commissioners refused to allow Mrs. J. W. Pitman (widow) to vote against said tax on the whole or any part of property situated in said school district, and

assessed for $3,800, one-half of which belonged then and now as widow in community with her deceased husband, and to which she could then and can now make a perfect and valid title, as the said community of acquets and gains owed no debts.

(5) That they allowed the commercial firm of Shaw & Melder, domiciled in the town of Forrest Hill, and which partnership is expressly forbidden to vote at such election, to pretend to divide up the assets of said partnership and each of said partners to vote the one-half of the amount assessed to said partnership. That they would not allow Willie Calhoun, who was assessed for property valued at $800 situated in said town of Forrest Hill, and who offered to vote against said tax, to vote at all.

Petitioner averred that he had reason to believe that an inspection of the ballot box, poll list, assessment list, list of voters, tally sheets, and tabulation of votes, made and kept by said commissioners holding said special election, and which he is informed were (at the date of the filing of his petition) locked up in the ballot box used by them in holding said election, and which ballot box he was informed was (at the same date) in the custody of D. B. Showalter, parish superintendent of schools for Rapides parish, at his office in the courthouse in Alexandria, La., would show many other irregularities and illegalities in the conduct and holding of said special election, committed by those whose votes were counted in favor of the levying of said special tax, and which were permitted and countenanced by said commissioners, more than sufficient to change the result as certified by said commissioners and as promulgated by said supervisors of elections, and which would, when investigated, show that said tax was in fact and truth defeated, and not carried.

That the school board of Rapides parish, of which Jonas Rosenthal, who is a resident of your said parish of Rapides, is president, would be the beneficiary of said special tax, if it should be levied and collected, and that said school board duly organized under the laws of this state as a political body having corporate existence, and should be made defendant herein.

That according to the laws governing the holding of such special elections to levy taxes for the building of schoolhouses in the school districts of this state and in this parish, and in accordance with the legal votes cast at said special election, he believed it to be true, and therefore charged as being true, that, eliminating the illegal votes cast in favor of the levying of said special tax and counting against the said tax the legal votes which were excluded, and which would have been cast against the levying of said special tax, said tax was really defeated at said special election, and that no tax should be levied or collected in said school district against the will, legally expressed, of a majority in amount of the property tax payers of said school district. That to permit the levying and collecting of said special tax, unless the same had been legally sanctioned by a majority in number and amount of the property tax payers legally entitled at said election, would be to perpetrate upon all those opposed to the levying and collecting of said special tax a grievous injury, it would be the practical taking of their property for public purposes without due process of law, and it would amount to a gross violation of, and a wanton destruction of, their rights of property and of their citizenship under the protection and sanction of the law.

That outside of the town of Forrest Hill, in said school district, there existed a very considerable opposition to the levying and collecting of said special tax, having for its object and purpose to erect a high school building in the town of Forrest Hill, because a great many of the property tax payers duly qualified to vote at the special election be-

lieved that they and their families would derive no benefit from such a building when erected; that there were not enough pupils to support a high school at Forrest Hill; that it would practically be furnishing at the expense of the taxpayers of the school district a much more expensive building than was needed for the grammar school located in the town of Forrest Hill; and while all of those who were opposed and opposing the levying and collecting of this special tax for a building in the town of Forrest Hill were warmly and heartily in favor of public schools, public education, and were also, when it was necessary, in favor of special taxes for the public schools, they were opposed to this tax at this time, because they were of the opinion that such a tax would be more beneficial if it was to be levied in aid of the common schools of this school district, that the children attending them might have better schoolhouses and longer terms of schools in the district. So this honorable court was given to understand that this was no factious contest, but because petitioner believed (as did a great many other taxpayers in that district) that he would be seriously injured and aggrieved if said tax, which was really defeated at the special election, should be permitted to be levied and collected.

That any order or ordinance of the police jury of this parish based on the promulgation of the result of said special election, ordering the assessor, William F. Texada, to assess, and Charles M. Kilpatrick, sheriff, to collect, said special tax, was induced by error, and in ignorance of the fact that said special election was not conducted according to law, and that said tax was really defeated at said special election. He prayed that, after hearing, the court should decree said promulgation of the result of said special election by the supervisors of elections, said ordinance of the police jury ordering and assessing and collecting of said tax (if any such

125 LA.—32

ordinance had been passed by the police jury), and any assessment of said special tax on the tax rolls of said school district, to be null, void, and of no effect, and that Charles M. Kilpatrick, sheriff, if said special tax had been extended on the tax rolls of this parish when such rolls should be made and delivered to him for collection, be prohibited from collecting said tax, and that it should decree that said special tax was really defeated at said special election, and that all proceedings to promulgate the result of said special election as being in favor of the levying and collecting of said special tax, and to levy and collect the same, should be declared to be null and void and of no effect. That no such assessment had or should be made as yet under the law governing assessment of general and special taxes in this state, and that same could not be attempted to be collected by said sheriff before this case should be heard and determined in court as a preference case on the docket of this honorable court, as against the school board of this parish. That the beneficiary of said tax was at that time the only necessary party defendant, and that for that reason he did not then make the said police jury, the said assessor, and tax collector defendants herein; and for the same reason he did not ask for a writ of injunction to restrain the levying and collecting of said special tax, but he reserved the right, in case it should hereafter become necessary to restrain the levying and collecting of said special tax, to make said assessor and tax collector parties hereto, and to obtain such writs of injunction as might be necessary to prevent the levying and collecting of said tax.

In view of the premises, petitioner prayed that the school board of the parish of Rapides, through its president, Jonas Rosenthal; and the board of supervisors of elections of Rapides parish, through its president, George A. Staples, be duly cited to appear and answer hereto; that the parish superintendent

of schools for Rapides parish, D. B. Showalter, be ordered and required to produce in open court on the day of the trial of this cause the ballot box, together with the ballots, poll list, list of voters, assessment list furnished the commissioners, the tabulated statement of votes, and all other contents of said ballot box used at said special election held at Forrest Hill, on said 6th day of March, 1909, in order that same might be opened and used on the trial of this cause. And petitioner prayed that, after hearing and due proceedings had herein, it be decreed that said special tax was defeated at said special election; that the promulgation by said board of election supervisors, showing that the result of said election was in favor of the levying and collecting of said special tax, be annulled and made of no force and effect; that any assessment of same on the tax rolls of this parish for said school district be annulled and made of no force and effect; that the sheriff be ordered not to collect the said special tax, if same be extended on said rolls; and he prayed that in case the court should be of opinion that the president of the police jury, the said assessor, and the said sheriff were necessary parties to this suit, that they be cited as defendants, and, if an injunction should be necessary to stop the said assessor from assessing and the said sheriff from collecting said special tax, that his right to apply for said injunction on his making oath to the allegations of this petition and furnishing such bond as might be required be reserved to him; and he prayed for all other and further orders and decrees necessary and proper in the premises, and for costs, and for general relief.

Attached to plaintiff's petition was a copy of the petition of property tax payers addressed to the police jury, and the subsequent proceedings and ordinances of that body based thereon. The parish board of school directors answered. After pleading a general denial, they admitted that the election was held as set forth in the petition and resulted as therein stated.

It specially denied that any persons at said election were permitted to change their assessment for the purpose of voting at said election.

It specially denied that persons permitted to change their assessments were known as voters for the said tax, and that no such persons voted on affidavits.

It admitted that a sum was deducted from the total assessment of petitioner, because said petitioner owned property that was assessed to him in 1908 that did not lie within the said school district and would not be subject to said tax. It did not admit, however, that the sum of $1,800 was deducted therefrom, and only admitted that his assessment was reduced to some extent.

Respondent admitted that Mrs. J. W. Pitman, a widow, was not permitted to vote by proxy, because the assessment on the rolls showed that the property which she proposed to vote on was assessed to the estate of Pitman.

Respondent admitted that the firm of Shaw & Melder did divide the assets of the said partnership as assessed and voted the same, but averred that even if this action was illegal it would not change the result of the election.

Respondent admitted that Willie Calhoun was not permitted to vote, because he had sold the property that was assessed to him in 1898, and did not own it at the time he offered to vote; that the purchaser of the said property was not a legal voter at that time, and was not permitted to vote for that reason, but that, if permitted to vote, he would have voted for the tax.

Respondent, further answering, says that the said election was conducted according to law, and result ascertained and proclaimed all as the law directs.

In view of the premises it prayed that

plaintiff's action be dismissed at his own costs and the said election declared as having been properly conducted and legal in form.

The district court, being of opinion that the election attacked in the petition should be set aside for irregularities, and that the result of said election as proclaimed by the commissioners and election supervisors did not fairly express the will of the majority of the property tax payers entitled to vote at said election for reasons orally assigned, ordered, adjudged, and decreed that the result of the election held in the Forrest Hill school district of Rapides parish, at Forrest Hill, on March 6, 1909, to submit to the taxpayers of that school district the question of levying a tax of five mills for 10 years to build a high school building in the town of Forrest Hill, as announced by the commissioners of election who held said election, and the result of said election as found and proclaimed by the board of election supervisors in and for the parish of Rapides on the 10th day of March, 1909, be annulled, set aside, and made of no force and effect, and said election be and the same be set aside, annulled, and made of no force and effect.

It was further ordered, adjudged, and decreed that defendant pay all the costs of this suit, and that said tax be not levied or collected.

Defendant moved for a new trial for the reasons that:

First. It was contrary to the law, in this: That it was the duty of the court to ascertain, if possible, the true result of an election, and give force and effect to the will of the people as expressed thereat, if the same could be reasonably and fairly done.

Second. It was further contrary to the law, as the court must have held that, by reason of the refusal of the commissioners to permit Mrs. Pitman to vote the assessment made against J. W. Pitman, the court must have decided that she had the right and privilege of voting her community rights in the property. That this was not a correct decision, because there was not one particle of evidence to show the court that Mrs. Pitman was the widow of J. W. Pitman, that she had any community interest of any kind in the property, and, further, if the court was satisfied from the evidence that she did have a community interest, there was no evidence to show that that community interest had ever been judicially ascertained.

It was contrary to the evidence, because the court must have been of the opinion that the evidence established the fact that the plaintiff, B. E. Smith, had the right to vote $1,800 more than he did vote at the election. That the evidence did not disclose this right under any possible interpretation thereof. It did show that Mr. Smith simply announced that he believed he had a right to vote more than was on the list, which was guiding the commissioners as to the values to be voted at the election. He did not state nor offer any evidence whatever at the time of any specific amount that he was entitled to vote over and above the amount on the list. He made no offer to make affidavit, and made none. He did not show any evidence, and offered to give no evidence, to the commissioners to show that he was entitled to vote more than was on the list. The commissioners, therefore, could do nothing more than permit him to vote the value on the list, which they did do. If an injustice was done Mr. Smith, it was through no fault of the commissioners who arranged the election, as Mr. Smith admitted in his testimony that he discovered that a portion of his property on the assessment rolls was placed in the wrong township, and did not show from the assessment rolls to be located in the school district.

In view of the premises, defendant urged that the refusal of the commissioners to permit Mrs. Pitman to vote the assessment

charged against her husband, J. W. Pitman, be maintained, and the action of the commissioners in regard to the vote of B. E. Smith be also maintained; but, if not, the result would still show majority in number and value voted at said election. That deducting even all of the votes as to values which were claimed by defendant, to wit, $1,500 voted by C. M. Shaw and J. W. Melder, $80 which Mr. Mizell voted, $230 that which was voted by Mrs. Peninger, and it would be found that there was a majority in value in favor of the election.

For all of which reasons, the defendant prayed that the judgment rendered be set aside, and a new trial granted.

The motion was refused.

The defendant has appealed.

## Opinion.

The specific allegations on which the plaintiff relied for setting aside the special election held in the Forrest Hill district No. 16 of Rapides parish were the following:

1. Voters were permitted to change their assessments from the amounts shown on the rolls of 1908, and vote on affidavits as to the valuation of their assessments' on proposed rolls of 1909, not then made.

2. That only such persons as were known to be willing to vote for said tax were so allowed to change their assessments, and the privilege refused to those whom it was known were opposed to said tax.

3. That said commissioners deducted $1,800 from plaintiff's assessments as shown by the rolls, and allowed him only to vote $3,400 against said tax, and refused him the right to make affidavit as to the true valuation of his property lying within said school district.

4. Mrs. Pitman was refused the right to vote on proxy on an assessment of $3,800, one-half of which belonged to her then and now as widow in community with her deceased husband.

5. The commercial firm of Shaw & Melder was permitted to divide the assessment against the partnership, and each voted his pro rata interest therein.

6. Willie Calhoun was not permitted to vote against the tax on an assessment of $800.

7. An inspection of the ballot box, poll list, tally sheets, and tabulation of votes kept by commissioners would show many other irregularities and illegalities in the conduct of said election, more than sufficient to change result.

Defendants admitted that a sum was deducted from assessment of plaintiff, because a portion of his property did not lie in the school district. But did not admit that this was done by the commissioners of election.

(4) Admitted that Mrs. Pitman was not permitted to vote because the property on which she proposed to vote was assessed to Estate of Pitman.

(5) Admitted that the firm of Shaw & Melder did divide the assessment of said partnership, and each partner voted his probate thereof.

(6) Admitted that Willie Calhoun was not permitted to vote because he had sold prior to the election the property for which he was assessed the year before.

They specially denied allegations Nos. 1 and 2 above referred to.

The evidence establishes that the plaintiff voted at the election upon the valuation of his property in the school district as shown in the copy of the rolls furnished to the commissioners. It does not show that the commissioners "refused to allow him the privilege of making an affidavit as to the valuation in that school district of property valued at $9,000 for the assessment roll of 1899" as alleged. It is quite likely that, had he—when he presented himself in the morning to vote—offered to make an affidavit, he would have been refused that priv-

ilege, for the commissioners seem in the earlier part of the day to have considered that they were forced to govern themselves strictly by the extract from the assessment rolls which had been furnished them, but that later they changed their views on that question, although not to the extent that plaintiff alleged, nor for the purpose of altering, in favor of the imposition of the tax, the vote at the election.

The plaintiff was beyond doubt dissatisfied when he found the valuation of his property in the school district upon the assessment rolls of 1908, as appeared on the list furnished the commissioners, was such as it was, and declared at the time that it was wrong, stating that he was entitled to vote on a greater amount of property, and also that, if the vote at the election was announced to be favorable to the tax, he would contest; but he does not seem to have known with certainty at that time what in point of fact should have been the valuation of his property in the district. He was unable to make an affidavit on the subject, and therefore did not attempt to make one. He cast his vote against the tax on the valuation as appearing in the list, showing the assessment of 1908, $3,450. He has done what he said he would do; that is, he has contested the result announced by the commissioners. Under the evidence and the circumstances disclosed, we do not think that there was legal ground for plaintiff to complain or to contest.

Plaintiff's complaint that "the commissioners illegally refused to allow Mrs. Pitman to vote against the tax on either the whole or any part of the property in said school district and, assessed in the name of J. B. Pitman for $3,800, one-half of which he alleges "belonged then and now to her as widow in community with her deceased husband, and to which she could then still make a perfect and valid title, as the said commu-

nity owed no debts," is not, we think, well grounded. The widow's name did not appear on the rolls as a property tax payer, and there was nothing by which the commissioners were informed that the community owed no debts, and nothing to show that she had accepted the community. Mrs. Pitman was not present at the voting place, but was represented by a proxy, who does not appear to have offered to make any affidavit on the subject. In Endom v. City of Monroe, 112 La. 786, 36 South. 681, this court was called upon to decide whether widows, claiming to be owners of one half of the community property of the community between themselves and their deceased husbands and as usufructuaries of the other half, should be entitled to vote. The court was of opinion that, where the widow had a well-defined right as surviving widow in community as owner of one-half of the property of that community, her vote on that half should not be excluded; that, in order that such widows might vote, it should, however, be made to appear by judgment or order of court of no uncertain meaning; that where the properties were assessed in the names of the respective successions, and the successions were unsettled, it would be expecting too much of commissioners of election that they should fix the amount of the community interest of the voters; that where the community interests were unsettled, and its extent was entirely unknown, the vote of the widows should be excluded; that the commissioners could not be expected to investigate legal questions to determine whether or not a vote should be refused; that conclusive evidence should be presented.

In the same case it was held by two members of the court (the three other members of the court holding otherwise) that the widow in community as usufructuary of the share of the husband in the community property, was not entitled to a vote as such usu-

fructuary, as she was not the owner of the property on which it was proposed to impress or impose a property tax. That question is not presented in this case, nor was it necessary in the one cited; but the writer takes occasion to say that he does not adhere to that view of the question. The refusal by the commissioners to allow Willie Calhoun to vote on assessed value of $800 as upon property belonging to him in the school district was correct. He was not the owner of that property at the time of the election—he had sold the same. The evidence shows that the individual members of the commercial firm of Shaw & Melder were permitted to divide the assessment upon the assets of that firm, and that they each voted in favor of the tax upon his pro rata interest in the firm; the assessment upon the assets of the firm being $1,500, the interest of Shaw in the firm being three-quarters, and the interest of Melder being one-quarter thereof.

The court is of opinion there was no error in that ruling. Plaintiff, being doubtless not informed, at the time of filing his petition, of any specific grounds upon which to base a contest "other than those enumerated, alleged that an inspection of the ballot box, poll list, tally sheets, and tabulation of votes (which he prayed should be brought into court and examined) would show other irregularities and illegalities in the conduct of said election more than sufficient to change the result." Whether upon an allegation of that character, based upon the assumption that illegalities and irregularities in the conduct of election would be found more than sufficient to change the result, plaintiff could predicate a contest, we will refer to later.

It was shown on the trial that Dr. Dean, who lived in Forrest Hill, appeared on the list with which the commissioners had been furnished from the assessment roll of 1908

as assessed for the sum of $695. Plaintiff's counsel in their brief say as to this:

"He produced his tax receipt, which showed that he had paid $22.20, and on the simple production of this tax receipt and figuring out what amount of property that amount of taxes called for, and without requiring him to make an affidavit, the commissioners allowed him to vote for the tax on $1,110 of property. He did make an affidavit as to $50 worth of property held in common with two others, but not as to his increased vote on his individual property. It was shown on the trial that he was actually assessed for the full amount which he voted, and the complaint as to his vote is, not that any fraud or wrong was committed, but that the commissioners violated the law in not requiring him, as they should have done, to make an affidavit."

It was admitted on the trial that L. H. Mizell voted for the tax on property assessed at $645, and that he should have voted only on $580. It was admitted on the trial that Mrs. Lydia Peninger voted for the tax on $640 of property, and that properly she should only have voted on $350. Plaintiff urges that Mrs. Henderson, Mrs. Gunter, and Mrs. Slawter voted by proxy, and that there was no power of attorney in writing annexed to their ballots. The powers of attorney of the parties who cast the votes on their behalf were not attached to the ballots. It is testified that powers of attorney to different proxies were produced to the commissioners, but that the latter did not know what to do with them, and, not thinking they were called on to put them in the ballot box, they left them out. We think they should have been placed in the box; but we cannot presume that the commissioners violated their duty by permitting proxies to vote who had not produced to them evidence of their right to act as such.

We are of the opinion that the plaintiff on the trial of the case was limited in his attack on the result to the grounds of contest specifically set forth in his petition. The defendant insists that if, on the trial of the case, the persons who voted at the election in favor of the tax were shown to have been en-

titled in fact to have voted as they did, and that the vote cast justified the announcement by the commissioners that the tax was legally carried, no mere error in the commissioners in allowing the votes to have been received should have the effect of defeating the actual result. Defendant cites Duson v. Thompson, 32 La. Ann. 862, McKnight v. Ragan, 33 La. Ann. 398, Lucky v. Police Jury of Bienville Parish, 46 La. Ann. 679, 15 South. 89, and Flores v. Police Jury of De Soto Parish, 116 La. 428, 40 South. 785.

We are of the opinion that if on the trial of the case, the defendant showed that any particular voter at the election was in fact legally authorized to vote, no mere error of judgment of the commissioners in allowing some of the votes which were cast in favor of the tax to be cast (which might have been excluded for want of sufficient evidence at the time of voting of their right to vote) should furnish ground for setting aside the result of the election. Conant v. Millaudon, 5 La. Ann. 542.

We are of the opinion that the judgment appealed from was erroneous, and it is hereby ordered, adjudged, and decreed that the same be and it is hereby annulled, avoided, and reversed, and it is ordered, adjudged, and decreed that plaintiff's demand be rejected, and his suit is hereby dismissed, at his costs in both courts.