(70 South. 99)

No. 21037.

ELKINS et al. v. BOARD OF SCHOOL DIRECTORS OF PARISH OF UNION.

(On Motion to Dismiss, Feb. 8, 1915. On the Merits, April 26, 1915. On Rehearing, Nov. 29, 1915.)

*(Syllabus by the Court.)*

On Motion to Dismiss.

1. COURTS ⬅⬆224 — LOUISIANA SUPREME COURT—JURISDICTION.

The provision of the Constitution, extending the appellate jurisdiction of this court to "all cases in which the constitutionality or legality of any tax, toll, or impost, whatever, * * * shall be in contestation," (Const. art. 85), is subject to no other limitation than is fairly contained in the language quoted, and it applies to a case involving a special school tax, as to any other tax, the only question being whether the matter in contestation is the constitutionality or legality of the tax, or some other matter.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 487, 608, 609, 614, 616, 617; Dec. Dig. ⬅⬆224.]

2. COURTS ⬅⬆224—LOUISIANA COURT—JURISDICTION.

When parties, having an interest and standing so to do, bring a suit charging that a special tax election was illegally conducted in various ways, which they specify, that the results, as promulgated, are erroneous; and, that, with the correction of the errors and illegalities, the tax would be defeated, and the school board, made defendant, affirms the validity of the election and the tax, the constitutionality and legality of the tax are put in contestation, and the appeal is properly brought to this court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 487, 608, 609, 614, 616, 617; Dec. Dig. ⬅⬆224.]

*(Additional Syllabus by Editorial Staff.)*

On the Merits.

3. SCHOOLS AND SCHOOL DISTRICTS ⬅⬆103— TAXES—ELECTION.

Under Act No. 256 of 1910, § 3, providing for election notices, a school tax election is not bad because the same document included notice of an election in another district, where there was only one schoolhouse in each district, though the notice declared that the polling places should be the schoolhouses of the respective school districts.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 114, 115, 117, 240–245, 252; Dec. Dig. ⬅⬆103.]

4. SCHOOLS AND SCHOOL DISTRICTS ⬅⬆103— SPECIAL TAXES—ELECTIONS.

As school tax elections are held under Act No. 256 of 1910, the fact that a member of the school board was appointed commissioner or clerk does not invalidate the election, Act No. 277 of 1914 making it a criminal offense in primary elections for any state official to act as clerk or commissioner not applying.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 114, 115, 117, 240–245, 252; Dec. Dig. ⬅⬆103.]

On Rehearing.

5. SCHOOLS AND SCHOOL DISTRICTS ⬅⬆103— TAX ELECTIONS — LIST OF PROPERTY TAXPAYERS.

Where, in a school tax election held under authority of Act No. 256 of 1910, it appears that a list of the property taxpayers entitled to vote, with the valuation of each taxpayer's property, was not furnished to the commissioners of election by the registrar of voters, as required by section 6 of the statute, the illegality in the proceedings renders the tax invalid.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 114, 115, 117, 240–245, 252; Dec. Dig. ⬅⬆103.]

Provosty, J., dissenting.

Appeal from Fourth District Court, Parish of Union; J. B. Holstead, Judge.

Action by John N. Elkins and others against the Board of School Directors of the Parish of Union. From a decree for plaintiffs, defendant appeals. Affirmed.

H. B. Warren, Dist. Atty., of Ruston, for appellant. J. B. Crow and H. G. Fields, both of Farmersville, for appellees.

## On Motion to Dismiss Appeal.

MONROE, C. J. Plaintiffs, as citizens and property holders of school district 34, of Union parish, brought this suit to have declared void a certain special tax election, held in that district, and have the school board enjoined from levying and collecting the tax, and they obtained judgment as prayed for, from which the defendant board appealed. Plaintiffs now move to dismiss the appeal, upon the grounds that the amount involved is less than $2,000, and that the tax is not one imposed, or sought to be imposed, by a municipal corporation.

[1] The words "municipal corporation" are used in article 85 of the Constitution only in connection with the grant of jurisdiction in cases where the constitutionality or legality of the "fines, forfeitures and penalties" imposed by such corporations are in contestation, and in cases in which the ordinances of such corporations have been declared unconstitutional. The grant of appellate jurisdiction, in all cases in which the "constitutionality or legality of any tax toll, or impost, whatever, * * * shall be in contestation," is subject to no other limitation than is fairly contained in the language quoted, and it applies as well to a school tax as to any other, the only question, in such case, being whether the matter in contest is the constitutionality or legality of the tax, or some other matter. Argyle Planing & Mfg. Co. v. Connely, Sheriff, 125 La. 686, 51 South. 687.

[2] The petition alleges various grounds of illegality in the election, to wit, that the proclamation was published confusedly with another proclamation, relating to a tax in another district; that one of the members of the school board was appointed, by the board, commissioner, or clerk, of the election, and so acted, though he was incompetent, because he could not participate in his own appointment, and could not hold the two offices; that the clerk of court and ex officio registrar of voters, furnished the commissioners with no such list of taxpayers entitled to vote, and their assessments, as the law requires, and that the irregular and uncertified list that was furnished contained the names of persons who were not entitled to vote, and omitted the names of some who were, and that persons were thereby precluded from voting who would otherwise have voted against the tax; that the school directors appointed commissioners and clerks who were in favor of the tax; that one or more commissioners left the voting place, and a person, or persons, favorable to the tax was, or were, instituted in his or their place or places; that no voting booths were prepared, and secret voting was impossible; that the election was not opened by the officers at the proper time, or in the manner prescribed by law; that the results of the election, as promulgated, are incorrect; and that, with the count legally and properly made, the tax was defeated; and the petition specifies a number of persons who were allowed to vote property which, as it is alleged, they did not own, or owned only in part, or which was not in the district, and other persons whose votes were excluded when, as it is alleged, they should have been counted. Defendant excepted and answered, and, affirming the validity of the proceedings, prays that the suit be dismissed, and that there be judgment decreeing the election to have been regular and legal, and to have been carried in favor of the tax.

Without going into the other details, it would seem to be sufficient to say that, if, as alleged, on the one hand, and denied on the other, there were not enough legal votes cast for the tax to carry the election, and the defendant fell into error, in the count, and promulgated a result that was not reached

in the manner contemplated by law, then the tax that it proposes to levy is illegal and unconstitutional, and upon the question of legality and constitutionality vel non the appeal is properly brought to this court.

The motion to dismiss is therefore overruled.

## On the Merits.

PROVOSTY, J.   The object of this suit is to annul an election held for voting a school tax.

[3] The first irregularity in the election, complained of by plaintiff, is that the notice of the election required by section 3 of Act 256, p. 426, of 1910, under which the election was held, to be advertised for 30 days, was contained in the same document as the notice of another school tax election which the school board, at the same meeting at which it · ordered the election in question in this suit, ordered to be held in another school district on the same day as the election in this suit.   It is said that this blending of the two notices in one document was confusing, and therefore was a fatal irregularity.   The notice is in the record, and appears to us to be perfectly clear and explicit.   The only way in which counsel suggest it might have proved confusing is that instead of announcing that the polling place would be the schoolhouse of the school district, it announced that:

"For the purposes of said elections the polling places will be the schoolhouses of the respective school districts."

This use of the plural instead of the singular might have been confusing if there had been more than one schoolhouse in each of the districts, but as there was but one, no confusion was possible.   In saying there was but one, we accept the statement of the district attorney, representing the defendant, corroborated by the notice itself, which appoints commissioners and a clerk of election only for one polling place in each of the districts.

[4] The next alleged irregularity is that the school board appointed one of its own members commissioner or clerk of election. There is no allegation that he acted at the election, but, as a matter of fact he did. Whether as commissioner or clerk, however, does not appear.   The argument in plaintiff's brief in support of this ground of nullity is as follows:

"Act No. 277 of 1914 makes it a criminal offense in all primary elections for any parish or state official to act as clerk or commissioner of election.   Since school tax elections are held under the rules governing general elections, and since primary elections are conducted in the same manner as general elections, it therefore follows that it was not only improper and irregular for Mr. Everett to have himself appointed, and to assist in appointing himself, to the office of commissioner or clerk of the said election, but it is very probable that he has even violated the criminal laws of this state.   It would certainly be illegal and improper for a judge of the court to sit in judgment in his own case; it would certainly be illegal and improper for sheriff to serve papers directed against himself on himself.   Therefore it seems just as improper and as illegal for Mr. Everett to sit in a body, as a member thereof, and have himself appointed, and assist in having himself appointed, to an office, although the emoluments thereof may be small or nil."

The said Act 277 of 1914, which is here said to contain a prohibition against officers serving as commissioners of election, refers exclusively to primary elections; whereas elections such as the one in question in this suit are governed entirely by said Act 256 of 1910.   The qualifications of commissioners of election are prescribed by its section 5, which contains nothing disqualifying a member of a school board by which an election . has been ordered from acting as one of the commissioners.   Perhaps it would have been better to appoint some one else, if available and equally competent; but this irregularity, if such it was, is certainly not sufficiently grave to be seriously considered as a ground for setting aside an election.

The next irregularity complained of is that the list of taxpayers and of the valuations of their property which was used at

the election had not been furnished by the registrar of voters, as required by section 6 of said Act 256 of 1910, but—

"by a person or persons not authorized by law to make and send out such lists; and that said illegal list contained the names of a number of persons who were not qualified to vote at said election, and omitted to name several persons who were qualified to vote thereat, and that, therefore, some persons were precluded from voting at said election."

No attempt was made to substantiate by proof this allegation of some persons having been precluded from voting at the election.

On the point of the preparation of the list of taxpayers the testimony shows that the list of the names of the taxpayers was furnished by the clerk of court, and ex officio registrar of voters (Act 212, p. 446, of 1912), but that the list of valuations was made up by the assessor and the parish superintendent of schools and secretary of the school board from the assessment roll, and that 10 names were added to the list in pencil after it had been forwarded to the commissioners of election.

There is very grave irregularity here, the like of which might, in an election on a larger scale, give rise to endless difficulties and complications at the poll; but in the election in the small school district here in question (the total list including the names added in pencil comprising only 38 persons), where, doubtless, every voter was acquainted with every other voter and knew what property he had, no complications arose, but the voting went on as regularly as if the list had emanated from the true legal source and had been duly certified, and no harm was done. There is no allegation or contention that the defectiveness of the list had any influence at all upon even a single vote. Under these circumstances we can see no sufficient reason why the election should be set aside because of this irregularity. There is no contention that the persons whose names were added in pencil were not entitled to vote at

the election, and, no suggestion of fraud or ill practice, or of bad faith.

"The result of an election held under article 232 of the Constitution will not be set aside because the commissioners of election received votes without proper evidence, when it is subsequently shown that the votes so received were legal votes." Smith v. Board of Directors, 125 La. 987, 52 South. 122.

See, also, Conant v. Millaudon, 5 La. Ann. 542.

"Where the commissioners of a special tax election acted in good faith, the irregular reception and rejection of votes by them, which did not change the result, furnishes no grounds for annulling the election." McWilliams v. Board of Directors, 128 La. 422, 54 South. 928.

See, also, Endom v. City of Monroe, 112 La. 779, 36 South. 681, and Flores v. Police Jury, 116 La. 428, 40 South. 785.

The case of Gewin v. Police Jury of Jackson Parish, 130 La. 416, 58 South. 132, is not in point. There the assessment roll of the wrong year had been used as the basis of the election, and the result of the election had been thereby changed. In the instant case the right assessment roll was used. There the irregularity involved a matter of substance; it struck at the very foundation of the election. In the instant case it involves merely a matter of form; the election remains a true expression of the will of the voters qualified to take part in it.

It is next urged, but not seriously we trust, that the commissioners and clerk of election "were known to be extremely favorable to carrying of the tax."

Next, that some of the commissioners left, and others were appointed in their stead. Section 9 of said Act 256 of 1910 expressly provides for supplying substitutes for commissioners who will not serve.

Next, but again not seriously we trust, that no booths were provided for secret voting. Said Act 256 does not require that the voting shall be secret; in fact, requires every voter to indorse his ballot for identifi-

cation. This differentiates the case entirely from Williams Cypress Co. v. Police Jury, 129 La. 267, 55 South. 878, where the election was held under a different act.

Next, that the poll was opened at 8 o'clock instead of at 7, as required by section 12 of said Act 256. Suffice it to say that the same section provides that such a delay shall not vitiate the election, "unless it is proved that voters were thereby deprived of their votes," and that this proof is not made in this case.

As an alternative ground of action, in the event the election proceedings are held to have been regular, plaintiff contends that if the illegal votes that were counted for the tax are excluded, the majority will be found to have been against the tax.

One of the alleged illegal votes is that of S. J. Abbott who was allowed to vote the full amount of his assessment, $725, although since the assessment he had sold his real estate, which represented $585 of the assessment. In the case of Smith v. Board of Directors, 125 La. 987, 52 South. 122, it was held that a voter cannot vote property for which he was assessed, but of which he was no longer owner at the date of the election. We adhere to that view. The property taxpayers to whose vote article 232, Const., requires the tax to be submitted are those who are such at the date of the election, and who therefore are voting the tax upon their own property, not those who were such at some time in the past, but are such no longer, and would be voting the tax upon no property of their own, but upon that of others.

Another of the alleged illegal votes was that of O. D. Elkins, $100. By an error in the description on the assessment roll his property appeared to be situated outside of the district. Parol was admitted to show the error, over the objection that parol is inadmissible to show title to real estate. Here is no question of showing title to real estate, but the situs of real estate. Smith v. Police Jury, 125 La. 724, 51 South. 701.

Another of the alleged illegal votes is that of C. M. Yossett, who was allowed to vote $500.55, although assessed for only $435. Defendant admits that the difference between these two amounts, viz., $65.55, was illegally voted, and must be deducted. Plaintiff contends that the whole must be deducted, because the property assessed to him belonged to the community of acquêts and gains at one time existing between him and his deceased wife, which community was yet unsettled. The property was assessed in his name, he was the usufructuary of it, and as such the payer of the tax, and therefore a taxpayer and entitled to vote. Endom v. City of Monroe, 112 La. 779, 36 South. 681.

Another of the alleged illegal votes is that of W. W. Boatwright of $300.85, of which $240 was for land. Plaintiff offered to prove that this land did not belong to Boatwright, but to his wife. The evidence was excluded. It should have been admitted; for if Boatwright was not owner of the land, he was in no way liable for any taxes that might be levied upon it.

Another of the alleged illegal votes is that of Mrs. A. A. Cherry, $500.55. Part of the property assessed to her is shown to belong to the community of acquêts and gains that existed between her and her deceased husband. She is usufructuary of this community property, and as such liable for the taxes on it, and therefore entitled to vote the property.

J. P. Miller was not a registered voter, and defendant admits that his vote, $500.85, should not have been counted.

Mrs. M. E. Beaird's vote of $370, cast by proxy to her husband, was thrown out because the ballot was not indorsed with the name both of the taxpayer and of the proxy, but only of the taxpayer, and therefore did not conform with section 11 of said Act 256, which requires that:

"Ballots voted by proxy shall have indorsed thereon the names of both of the taxpayer and ·of her proxy."

The power of attorney was attached to the ballot. The purpose of the indorsement is identification—to show by whom the ballot was cast. This purpose was answered, we think, by the attachment of the power of attorney to the ballot. The vote should therefore have been counted.

The tabulation will then be as follows:

Counted for the tax.................... 4,154
Counted against the tax................ 2,100
                                        ──────
                                        2,054
Deduct:
Abbott ......................... 585
Yossett ........................ 65
Boatwright ..................... 300
Miller ......................... 500
Mrs. Beaird .................... 370   1,820

Majority in favor of the tax........·   234

It is therefore ordered, adjudged, and de-creed that the judgment appealed from be set aside, and that the suit of plaintiffs be dismissed at their cost in both courts.

### On Rehearing.

O'NIELL, J. On reconsideration of the plaintiffs' complaint, that the list of property taxpayers, by which the commissioners were governed in conducting this election, was made and furnished by an unauthorized person, we have concluded that, although no actual fraud has been shown in this case, our approval of the illegal or irregular proceedings by which this tax was imposed might establish an unwise and harmful precedent.

[5] Section 6 of Act No. 256 of 1910, under authority of which this election was held, provides:

"That it shall be the duty of the registrar of voters to furnish the commissioners appointed to hold such elections with the lists of taxpayers entitled to vote in person or by proxy at such elections, together with the valuation of each taxpayer's property as shown by the assessment roll last made and filed prior to each election; provided that, when any taxpayer's name and valuation of property shall be omitted from such list or erroneously entered thereon the commissioners of election shall have au-thority to receive affidavits of such taxpayer's right to vote and of the proper assessed valuation of his property, which affidavit shall be attached to such taxpayer's ballot."

The evidence discloses that a list of names, without any valuation of property, was furnished by a deputy clerk of court to the local superintendent of the public schools, who copied it, and, with the assistance of the assessor, put the assessed valuation of the property of each taxpayer on the copy of the list, and gave it to the commissioners of election. After this unauthorized list or copy of the list, containing only 28 names, furnished by the deputy clerk of court, was delivered to the commissioners, 10 names were added with a pencil by an unauthorized person. And it does not appear that the commissioners required any voter whose name was thus added to the list to furnish an affidavit of his right to vote.

This illegality in the proceedings warrants the annulment of the tax.

For the reasons assigned, our former decree is set aside, and the judgment appealed from is affirmed, at the cost of the appellant.

PROVOSTY, J., dissents, adhering to the original opinion.