SOMMERVILLE, J.
This suit presents a contest between certain taxpayers of Belle View school district No. 31, in Vernon Parish, and the school board of that parish, over the result of a school election held July 3, 1917.
There was judgment in favor of defendant, sustaining the validity of the election and the tax levy thereunder, and plaintiffs have appealed.
Plaintiffs attacked the validity of the election on several grounds, but have presented only two points for consideration in this court, viz. that the commissioners of elec *745 tion were not sworn, and that the list of voters and their property valuations was not prepared in accordance with law.
It appears that one J. H. Turner, styled “returning officer,” administered the oaths to the commissioners and clerk of election after the election, and perhaps to the commissioners, but not the clerk, before the election.
Defendant refers to section 5 of Act No.-101 of 1SS2, p. 154, amending the general election law (section 36, No. 58 of 1877, p. SO), as authority for the action of the “re-, turning officer” in swearing the commissioners of election. But the authority of the “returning officer” was denied, and defendant offered no evidence to show that J. H. Turner had been appointed returning officer by the Governor of the state,, or that, he had been qualified in any way for the office.
The general election law, No. 152, p, 266, of 1S9S, makes no provision for the appointment of a “returning officer,” and all laws on the subject of elections contrary to the provisions of that act, were therein repealed. Section 45 of the act (page 27S) provides for the administering of the oath to the commissioners and clerk by an “officer qualified by law to administer oaths,” and, in the absence of such an officer, that “the commissioners shall administer the oath to each other.”
And section 10 of Act 256 of 1910, p. 4'26, under which act this election was held, makes the same provision. It reads:
“Be it further enacted, etc., that the commissioners and clerks of such elections, before opening the polls, shall be sworn to perform all the duties incumbent on them as such, the oath to be taken before any officer authorized to administer oaths, or by the clerk and each commissioner before any other commissioner, such commissioners of election being authorized to administer any oath and to receive any affidavit provided for in this act.”
This latter act provides further:
“Sec. 35. Be it further enacted, etc.,.that all laws contrary to or inconsistent with this act and all laws on the same subject-matter thereof be and the same are hereby repealed.”
The election under consideration was en-' tirely governed by Act 256 of 1910, p. 426.
The taking of the oath by the commissioners and clerk of election is an important requirement, and the failure to take it by them is a most serious omission or irregularity. That failure, of itself, might not have nullified the election; but, taken together with the other irregularity complained of, does annul it.
The other illegal act was the making of the list of voters by persons unauthorized to make it.
Section 6 of Act 256 of 1910, p. 429, makes it the duty of the registrar of voters to furnish the commissioners with the list of taxpayers entitled to vote in person or by proxy, together with the valuation of each taxpayer’s property.
The clerk of court, and ex officio registrar of voters, made, a partial list of the voters, embracing some 33 names; and there were thereafter attached to the list 14 names written on “a loose sheet of paper” by J. H. Turner, the above-styled “returning officer,” and his brother, Neal Turner. Those additional names were not examined or verified by the registrar of voters, and they were added to the list of voters by the superintendent of education, under the certificate prepared by the registrar of voters several days previous.
The property tax payers whose names were thus illegally added to the list of voters were allowed to vote without making affidavits, and attaching same to their ballots, showihg that they were entitled to vote at the election being held.
Such a gross violation of the election law is so flagrant, and admits of such opportunities of fraud, where every provision of the law should be adhered to, so as to insure the solemn decision of the taxpayers a.t the election, that it vitiates the election, although no fraud is shown.
*747 The ruling in the case of Elkins v. Board of School Directors, 138 La. 207, 70 South. 89, on rehearing, 138 La. 217, 70 South. 103, is in point, and will he repeated here as decisive of this case:
“The list of property taxpayers, by -which the commissioners were governed in conducting this election, was made and furnished by an unauthorized person, and we have concluded that, although no actual fraud has been shown in this case, our approval of the illegal or irregular proceedings by which this tax was imposed might establish an unwise and harmful precedent.
“The evidence discloses that a list of names, without any valuation of property, was furnished by a deputy clerk of court to the local superintendent of the public schools, who copied it, and, with the assistance of the assessor, put the assessed valuation of the property of each taxpayer on the copy of the list, and gave it to the commissioners of election. After this unauthorized list, or copy of the list, containing only 28 names, furnished by the deputy clerk of court, was delivered to the commissioners, 10 names were added with a pencil by an unauthorized person. And it does not appear that the commissioners required any voter whose name was thus added to the list to furnish an affidavit of his right to vote.
“This illegality in the proceedings warrants the annulment of the tax.”
See, also, Capps v. Parish Board, 138 La. 348, 70 South. 322.
It is therefore ordered, adjudged and decreed that the judgment appealed from be reversed, and that there now be judgment in favor of plaintiffs as prayed for.
O’NIELL, J., concurs in the decree.