(91 South. 825)

No. 24512.

## LONG v. CITY OF SHREVEPORT et al.

(June 30, 1921. On Rehearing, Jan. 30, 1922. Second Rehearing Denied April 24, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Carriers** ⊚⟿12(4)—**Requirements for grant of franchise must be complied with in increasing fares.**

The right to charge fares by a street railway company is a part of the franchise to use the streets, and the requirements prescribed for the granting of franchises must be complied with in granting the right to charge an increased fare.

2. **Carriers** ⊚⟿18(6)—**Elector injured by increase of street railroad fares by ordinance may sue for injunction.**

Under Act No. 302 of 1910, requiring ordinances granting franchises to be on file for one week before adoption, and notice thereof to be published, and requiring approval by the electors of street railway franchises, and publication of the ordinance itself before the submission to the voters, a qualified elector injured by an ordinance increasing the rate of fare may sue for an injunction, as the purpose of the first publication is to give those injuriously affected an opportunity to protect their rights in the courts.

3. **Municipal corporations** ⊚⟿108—**Submission to voters of ordinance changing street car fares not invalidated by irregularities.**

Where an election on the question of approving an ordinance increasing street car fares was fairly and honestly conducted, it was not invalidated because only two commissioners for each polling precinct, instead of three, were appointed, or because in some instances the proper oath was not taken by the election officials.

4. **Municipal corporations** ⊚⟿108—**Submission to voters of ordinance changing street car fares not invalidated by form of ballot.**

An election on the question of authorizing or approving an ordinance increasing street car fares, reading "For the ordinance relative to increased fares" and "Against the ordinance relative to increased fares," with the word "Yes" before the square opposite the affirmative of the proposition, and "No" before the square opposite the negative, did not invalidate the election as leaving it uncertain how to vote in the negative, where notice to voters thereon stated that to vote for the approval of the proposition the square opposite the first sentence should be stamped, and to vote against it, the square opposite the second sentence.

5. **Municipal corporations** ⊚⟿680, 681(7)—**City held to have power to grant and amend franchises.**

Under Rev. St. 1870, § 689, as amended by Act No. 125 of 1880, § 3, prohibiting the construction of railroads through streets without consent of the council, and Act No. 302 of 1910, § 10, regulating the manner of granting franchises, the city of Shreveport has power to grant and amend street railroad franchises.

6. **Carriers** ⊚⟿12(4)—**Ordinance granting increase of fare not invalid for want of consideration.**

An ordinance granting an increase in the fare chargeable by a street railroad under a franchise was not invalid for want of consideration where, owing to the increased cost of labor and materials, proper service could not be given the public unless the fare was increased, as the public benefits to be derived supplied whatever motive or consideration might be necessary.

7. **Carriers** ⊚⟿12(4) — **Ordinance increasing street railroad fares not invalid under provision of statute as to school children.**

An ordinance increasing street car fares from 5 to 6 cents did not violate Act No. 238 of 1916, § 2, requiring the consent of street

railways to the insertion in any ordinance modifying its franchise of a provision for the transportation of school children for not more than three-fifths of the fare charged adults, where the original franchise required school children to be transported for 2½ cents, and the amending ordinance provided that this fare should remain unchanged.

**8. Carriers ⊚⟝12(4)—Students attending business and other colleges held not "school children" within statute as to fares.**

Students 18 years of age or over, attending business colleges, or the junior and senior classes of other colleges, cannot be considered "school children" within Act No. 238 of 1916, § 2, requiring any street railway requesting any modification of its franchise to agree to transport school children for three-fifths of the fare charged adults.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, School Children.]

**9. Carriers ⊚⟝12(4) — Ordinance increasing street railroad fares not vague and unambiguous.**

An amendment referring to ordinances granting franchises held by a street railway company, and increasing the fare fixed in them, was not vague and unambiguous because it did not amend and reordain each section of each ordinance fixing fares.

**10. Constitutional law ⊚⟝101—No vested right under franchise fixing street car fares.**

A taxpayer, property owner, and qualified elector of a city had no vested right to transportation by a street car company for the fare fixed in its franchise, and hence an ordinance increasing the fare did not divest any vested right.

**11. Municipal corporations ⊚⟝106(1)—Ordinance increasing street car fares and notice thereof must be published before enactment.**

Act No. 302 of 1910, § 10, requiring ordinance granting any franchise to occupy the streets to be on file for one week before adoption, and notice thereof to be published, and section 14, par. 4, requiring any ordinance to be submitted to the voters to be published before the election, both applied to an ordinance increasing fares chargeable by a street railway company under its franchise, and were mandatory.

**12. Street railroads ⊚⟝24(8)—Notice of filing of ordinance granting franchise may be published before or after election.**

Under Act No. 302 of 1910, requiring ordinances granting any franchise, etc., to be on file for one week before adoption, and notice thereof to be published, and providing that no franchise to use the streets shall be granted, renewed, or extended except by ordinance which must be authorized or approved by the electors, it is immaterial whether publication of the notice that the ordinance is on file is made before or after the election at which the ordinance is authorized by the voters.

Provosty, C. J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; J. R. Land, Judge.

Suit by Huey P. Long, Jr., against the City of Shreveport and another. From a judgment for plaintiff, defendants appeal. Judgment set aside in part and affirmed in part on rehearing.

Second rehearing denied; O'NIELL, J., dissenting.

B. F. Roberts, City Atty., and Wise, Randolph, Rendall & Freyer, all of Shreveport (Thigpen & Herold, of Shreveport, of counsel), for appellants.

Huey P. Long, of Shreveport, in pro. per.

A. V. Coco, Atty. Gen., amicus curiæ.

By the WHOLE COURT.

PROVOSTY, J. The Shreveport Railway Company is a private corporation which for many years has been operating an electric street railway over the streets of the city of Shreveport by virtue of a franchise granted to it to that effect by the city authorities. The ordinance granting said franchise fixed at not more than 5 cents the fare which might be charged per passenger per trip, and said ordinance, by its acceptance by the company, became a contract between the company and the city. In 1920 the city authorities, on representation made to them by the company that, owing to the increased cost of labor and materials, proper service could not be given to the public, and still less anything earned for the owners of the railway, unless the fare to be charged was increased from 5 to 7 cents, proceeded to

hold an election, as required by law, submitting to the electors of the city for approval a proposition to allow an increase of fare to 6 cents, to be effective until December 31, 1923. The result of the election having been favorable, the city council adopted an ordinance allowing the increase; and thereupon plaintiff brought the present suit enjoining on various grounds the putting of the ordinance into operation.

An exception of no cause of action, founded upon the absence of right on the part of plaintiff to interfere in the matter, was referred by the trial court to the merits, and was eventually overruled. It should have been sustained, and the suit dismissed.

Plaintiff's connection with the matter is alleged in his original petition as follows:

"That he is a resident citizen, taxpayer, property owner and legally qualified of the city of Shreveport."

We assume that in plaintiff's petition the word "elector" came after the word "qualified," and that this word was inadvertently left out in transcribing the petition into the transcript.

In a supplemental petition he sets forth that he has a pecuniary interest in the matter arising from the fact that he owns in distant parts of the city improved lots which he leases to tenants too poor to own automobiles, and therefore dependent upon the street cars for transportation; and that the value of said property is almost entirely dependent upon its accessibility and the cost of going to and coming from same, so that this increase in car fare will injure him to the extent of several hundred dollars by reason of the value of his property being decreased, and that he was already owner of said property at the time of the adoption of said ordinance.

The Code of Practice, art. 15, provides that:

"An action can only be brought by one having a real and actual interest, which he pursues."

This, of course, means a pecuniary, not a mere sentimental, interest.

As a citizen or inhabitant of the city, plaintiff could have a pecuniary interest only if the fixing of the car fare at 5 cents in the contract theretofore existing between the city and the company had been a stipulation in his favor (in other words, a stipulation pour autrui), so that by accepting such stipulation he could make himself a party to the contract. But the point that the stipulations in the contracts of a municipality advantageous to the citizens of the municipality do not constitute stipulations pour autrui has heretofore been authoritatively decided. Allen Mfg. Co. v. Shreveport Waterworks Co., 113 La. 1091, 37 South. 980, 68 L. R. A. 650, 104 Am. St. Rep. 525, 2 Ann. Cas. 471; Black v. N. O. Ry. Co., 145 La. 180, 82 South. 81. This last case, by the way, was a car fare case, in which a citizen taxpayer, who was complaining, as in this case, of an increase in the car fare, was denied a right of action.

As a taxpayer plaintiff could have no pecuniary interest; for by no possibility could his burden of taxation be increased by the operation of said ordinance.

As an elector it is not seen how he could possibly have a pecuniary interest.

As a property owner it may be he has a pecuniary interest, but evidently not in the large amount alleged, and most probably in no amount at all. But, allowing him the full benefit of his allegations in that regard, the loss which he thus says he suffers is not one which invests him with the right to interfere in the affairs of the city in the manner attempted in this suit. He has no proprietary interest in the street car system, and was not privy to the contract by which it was established, and hence has no proprietary right whatever in the premises. If a con-

tract by which a row of palaces was projected to be built opposite his property, by which his property would be enhanced immensely in value, were changed by the parties to the contract so as not to build at all, or to erect constructions of a kind to reduce the value of his property, this loss would not invest him with the right to enjoin the parties to said contract from abandoning the idea of building the palaces, or to enjoin them from erecting structures of a kind to reduce the value of his property; and the situation would be the same if the proposition were to demolish an existing row of palaces upon the proximity to which the value of his property very largely depended.

Plaintiff not being a party to the franchise contract between the city and the company, the change made in that contract is the city's business, and not his own. It is not a matter which he can call upon the courts to control in his behalf. That phase of the matter is well illustrated by the case of Oliff v. City of Shreveport, 52 La. Ann. 1203, 27 South. 688, where certain citizens with a pecuniary interest exceeding $2,000 sought to control the city through the courts in the matter of a toll bridge, and the court said:

"Individual citizens have no vested rights in this matter, nor control over it"

—citing Barber Asphalt Paving Co. v. N. O., 49 La. Ann. 1608, 22 South. 955, where the court said of a modification injurious to the complainants which the city was making in one of her contracts:

"The city, both in making the original contract and in modifying it, was acting in the exercise of its general administrative powers, and not in any wise on behalf of any special class of citizens or property owners."

Private citizens have no mandate from the Constitution or the Legislature for exercising the functions of mentor or censor in the affairs of the municipality, and derive no such mandate from their citizenship or their quality of elector, and no privity in the contracts of the city confers it upon them; hence, until their property rights are invaded, they are helpless to exercise any influence over the actions of the municipal authorities, save only through their ballots at election times. Until, therefore, a citizen can show that the effect of some supposedly unauthorized action on the part of the municipality will be to increase his burden of taxation, he is without standing for interfering in whatever business the municipality may have with other parties than himself.

And in the matter of the granting of franchises by the city he is without authority to interfere unless thereby his burden of taxation is to be made more onerous. This discretion in such matters is vested by law in the city authorities, not in him.

The judgment appealed from is therefore set aside, and plaintiff's suit is dismissed, with costs in both courts.

On Rehearing.

By the WHOLE COURT.

OVERTON, J. Some years ago the city of Shreveport granted several franchises for the operation of street railways in that city. In the ordinances granting them, the fare was fixed at not exceeding 5 cents for each person, including certain transfers from one line to another. In respect to school children, the ordinances fixed the fare at 2½ cents for each child. It was provided, however, that the reduced fare for such children should not apply to students of business colleges or to students in their junior or senior years in attendance on other colleges, when 18 years of age, or past that age.

On March 23, 1920, the Shreveport Railway Company, the owner of these franchises, petitioned the mayor and city council of Shreveport to increase the rate from 5 to 7 cents. The basis for this request was the increased cost of operation. In response to

it, an ordinance was offered on March 30, 1920, increasing the fare from 5 to 6 cents from the date the ordinance should become effective till December 31, 1923, though, as to school children, the ordinance provides that the fare shall remain the same. On the day the ordinance was offered it passed first reading unanimously, and on April 13th it passed second reading. On the latter date the council ordered an election to be held on May 18, 1920, for the purpose of giving the qualified electors, as provided by law, an opportunity to adopt or reject the ordinance. The council, at the same time, and by the same ordinance, made provision for the form of the ballots, named the polling places, and the commissioners and clerks of election. The ordinance proposing an increase in the fare, which also included the provision made for the election, was published officially in a newspaper of the city on April 16, 1920, as ordinance No. 24, and, on April 20 and 27, and on May 4 and 11, 1920, the proclamation of the mayor, giving the notice of election, which covered in full the subject-matter of the ordinance, including a copy of that portion of it proposing an increase in the fare, was also published in the same paper.

At the election 935 votes were cast for the adoption of the ordinance, and 890 against its adoption. There was, therefore, a majority of 45 votes in favor of the proposed increase of the street car fare. The result was promulgated by the council, the ordinance declared adopted by it, and was promulgated, as ordinance No. 57 on June 10, 1920.

Shortly after the election the plaintiff in this case, alleging himself to be a taxpayer, property owner, and legally qualified elector of the city of Shreveport, instituted this suit for the purpose of having the said election and the ordinance increasing said fare decreed null and void. He alleges that the election is null because there was no legal call issued for it, no legal notice of election given, because no proper election officials were legally appointed and sworn, no legal ballots used, because the required number of commissioners did not serve, and, further, because no legal return of the election was made, and no notice given, prior to the election, to the effect that the draft of said ordinance was on file for public inspection, as provided by law. He alleges that the ordinance itself is null, because it is ultra vires of the city council, because it divests him and the people of the city, without consideration, of the vested right to transportation for a fare of 5 cents stipulated in the original ordinance and contract granting the franchise, because no notice was published in the official journal or other paper one week before the final passage of the ordinance to the effect that it was complete in the form in which it was expected to be finally passed, and that it was on file with the city secretary for public inspection, and further, because it was not authorized by a majority of the electors voting thereon at an election legally called and conducted. He also alleges that the ordinance will decrease the value of his property by increasing the cost of going to and returning from it, and will eventually make his burden of taxation heavier. He contends further that the ordinance is in violation of the Constitution of the United States (article 1, § 10) and of articles 59 and 166 of the Constitution of the state of Louisiana, adopted in 1913.

The two defendants, the city of Shreveport and the Shreveport Railway Company, filed exceptions of no right nor cause of action, and then answered, asserting the validity of the election and of the ordinance.

In the court below judgment was rendered annulling the election and the ordinance.

In our former decree we maintained the exception of no cause nor right of action. After further consideration, however, we have concluded that it should be overruled.

[1] The right to charge fares by a railway company for transporting passengers over the streets is at least a part of the franchise granted to use the streets, and the right to charge an increased fare, when granted, is a change in the franchise as it previously existed, and in making such change, the requirements prescribed for the granting of franchises to such companies must be complied with. That the same course must be pursued in increasing the fare as is prescribed for the granting of franchises does not appear to be contested in this case.

[2] Act 302 of 1910, to the provisions of which Shreveport is subject, requires that, in granting a franchise or right to use the streets, or in any renewal or extension thereof, there must be a compliance with certain requirements. Among these requirements is that the ordinance granting the franchise or right must be complete in the form in which it is expected to be finally passed, and, in that form, must be placed on file with the city secretary for public inspection for at least one week before its final passage or adoption, and notice that it has been placed on file for such purpose must be given in the official journal, or other paper, published in the municipality, one week prior to such passage. The act further provides that such a franchise or right, or the renewal or extension thereof, shall not be granted to street railways, unless it be authorized or approved by a majority of the electors voting thereon at a special election called by the city council for that purpose. Section 10 of Act 302 of 1910.

The purpose, in requiring that the ordinance be placed on file for public inspection before its final passage, and that notice to that effect be given, is to give those who may be injuriously affected an opportunity before its final passage to examine it, and to take the necessary steps to protect their rights, should those rights be unlawfully affected by it, in the event of its adoption. The notice is in the nature of a citation. If the proposed ordinance be illegal, and it be one increasing the street railway fare, the increase would be a burden illegally exacted of the elector, and others, and the purpose of the notice is to give them timely opportunity to protect themselves, not only before the council, but likewise, if it should become necessary, before the courts. It cannot be said that the purpose of the notice is to give an elector an opportunity to inspect the ordinance before voting on it, because section 14 of the act, in the fourth paragraph thereof, provides for the publication of the ordinance not more than 20 nor less than 5 days before its submission to the voters. The evident purpose of this publication is to serve that end by advising the voters of the contents of the ordinance. We therefore conclude that the purpose of the first publication mentioned is to give an elector, and others who may be injuriously affected, an opportunity to protect themselves, not only before the council, but before the courts, and therefore hold that the act contemplates that they shall have a cause of action to protect themselves against the violation of its provisions. Therefore, as plaintiff's petition shows that he is a qualified elector of the city of Shreveport, and is being injured by the ordinance, by having to pay an illegal fare, the exception of no cause nor right of action should be overruled.

Passing, therefore, from the exception of no cause of action to the merits of the case, and taking up for consideration plaintiff's contention that the ordinance is invalid because the election is null, we may say that we find no sufficient reason to annul the ordinance on account of the election. The contention that the election is null because there was no legal notice thereof given, and no legal return made, is not borne out by the evidence. Both requirements seem to have

been fulfilled. It is not pointed out in what respect the notice and the returns of the election are deficient, and we fail to find any.

[3] In respect to the contention that the required number of commissioners did not serve at the election, the ordinance ordering it, in providing the machinery thereof, named and appointed two commissioners and a clerk for each polling precinct, instead of three, and two served. Some of the commissioners appointed did not serve, and others were substituted in their place. It is also urged that in some instances the proper oath was not taken by these officials. The election appears to have been fairly and honestly conducted. No inconvenience or injustice appears to have resulted because of the appointment of two commissioners instead of three. In respect to the failure in some instances to administer the oath, we think this is such an irregularity as should not vitiate an election fairly and honestly conducted. De Berry v. Nicholson, 102 N. C. 465, 9 S. E. 545, 11 Am. St. Rep. 767. In respect to the number of commissioners, Ruling Case Law, in volume 9, on page 1013, after observing that there are some cases that take a contrary view, says:

"A more liberal doctrine has, however, been observed in a number of cases, upon the general principle that the rules and regulations adopted for the conduct of elections are to be considered directory merely, and not so mandatory or jurisdictional in their nature as to defeat an election in which they are not wholly observed. And so the failure to have the full number of election officers required by law, either permanently or by reason of temporary absence, is not, if the election has been honestly and properly conducted, fatal to the validity of the election."

The principles above stated are in accord with our view, and dispose of the objections urged as to the commissioners.

[4] It is also urged that the ballot used in the election was illegal, because, while the form of the ballot, as provided by the ordinance was substantially in accordance with law, in that it read, "For the ordinance relative to increased fares," etc., and "Against the ordinance relative to increased fares," etc., yet the ballot delivered to the voter after the affirmative of the proposition had the word "Yes," and after the negative the word "No," thus making it read substantially:

"Are you in favor of the ordinance? Yes."
"Are you against the ordinance? No."

Plaintiff, therefore, urges that no one had the opportunity to vote in the negative, and hence that the ballot was null and void.

An inspection of the ballot, however, shows that the word "Yes" is placed immediately before the square opposite the statement of the affirmative of the proposition, and the word "No" immediately before the square opposite the negative of the proposition, and were placed there simply to show by one word the place to stamp to vote in the affirmative, and by another the place to stamp to vote in the negative. However, if the placing of those words before the squares left it uncertain as to where to stamp to vote in the negative, this uncertainty was removed by the instruction printed on the face of the ballot, immediately below, instructing the voter as follows:

"*Notice to Voters*—To vote for approving the proposition, stamp the square opposite the sentence beginning 'For.' To vote against the proposition, stamp the square opposite the sentence beginning 'Against.' "

We therefore conclude that there is no merit in the contention as to the uncertainty of the ballot.

The contention that the election is null and void, because it was not preceded by the placing of the ordinance on file for public inspection and by the publication of notice that it was thus on file, although urged as a ground for annulling the election, yet, as it it also urged as a ground for annulling the ordinance, it is not necessary to consider it

here, but will be considered in passing upon it in the latter connection.

[5] It is contended that the ordinance is null, because the city of Shreveport is without power to grant or amend a franchise. This contention is not well founded. Section 689 of the Revised Statutes, as amended by section 3 of Act 125 of 1880, prohibits the construction of any railroad through the streets of a city or town, without the consent of the council thereof. This provision was held to grant to the city of Shreveport, by implication, power to grant a franchise for street railway purposes, on the application for rehearing, in the case of Shreveport Traction Company v. Shreveport, 122 La. 1, 47 South. 40, 129 Am. St. Rep. 345. See, also, 4 McQuillin on Municipal Corporations, p. 3398. We are further of the opinion that section 10 of Act 302 of 1910, which regulates the manner of granting franchises, including those for street railway purposes, and of extending and renewing them, also confers power on the city of Shreveport to grant franchises and to amend them.

[6] It is urged that the ordinance granting the increase in fare is invalid for want of a consideration. The purpose of the ordinance is to so fix the fare as to do justice to all parties concerned. It is a matter of vital interest to the public that the railway be maintained, and that it be not forced to operate at a loss to the public injury; and whatever motive or consideration may be necessary for the increased grant is found in the public benefits to be derived by placing the railroad in a position to be operated properly in the public interest. This is the consideration that moved the council, and evidently the people, to authorize the increase.

[7, 8] The invalidity of the ordinance is also urged on the ground that, in consenting to the increase, proper provision was not made for school children. The law provides that the rights, privileges, or obligations of a street railway company, under its franchise, shall not be amended, modified, or changed at its request, unless the corporation operating the railway shall agree to an insertion in the ordinance of a provision that it will furnish to all school children, in going to and returning from school, when provided with a certificate showing that they are school children, transportation for not more than three-fifths of the fare charged adults. Act 238 of 1916, § 2. Inasmuch as the ordinances which the one in question amends provide that school children shall be transported for a fare of 2½ cents, and, as the amending ordinance provides that the fare fixed for such children shall remain unchanged, this ground of attack falls, for the reason that the fare in the amending ordinance remains fixed at less than three-fifths of that for adults. It is true that these ordinances provide that students 18 years of age or over, attending business colleges, or attending other colleges when in their junior and senior classes, shall pay full fare, but such students cannot be considered school children. The council pursued the proper course in fixing the fare, instead of leaving it open to be fixed by the mere insertion of a clause in the ordinance that it shall not exceed three-fifths of the fare charged adults, and therefore the fact that the council, with the approval of the people, did fix it in an amount certain does not vitiate the ordinance.

[9] It is urged that the ordinance proposing the amendment is too vague and ambiguous, in that it seeks to amend unnamed ordinances. The amendment refers to ordinances granting franchises owned and held by the defendant company, and undertakes to increase the fare fixed in them for adults from 5 to 6 cents. There is, therefore, no difficulty in ascertaining that every ordinance granting a franchise which is owned or held by that company, and granted by the city of

Shreveport, is amended by increasing the fare from 5 to 6 cents. The amendment could not have been more clearly expressed. It was not necessary for the council to amend and reordain each section of every ordinance, fixing the fare, in order to attain the desired end.

[10] The contention that the amending ordinance is invalid, because it divests plaintiff of the vested right of transportation for a fare of 5 cents, is untenable. Plaintiff had no such vested right.

[11] The nullity of the ordinance is also urged, as already stated, upon the ground that it was not placed on file with the city secretary for public inspection, nor was notice given by publication that it was so placed at least one week before the final passage or adoption thereof. Section 10 of Act 302 of 1910 reads:

"Every ordinance or resolution appropriating money or ordering any street improvement or sewer, or making or authorizing the making of any contract, or granting any franchise or right to occupy or use the streets, highways, bridges, or public places in the city for any purpose, shall be complete in the form in which it is finally passed, and remain on file with the city secretary for public inspection at least one week before the final passage or adoption thereof, and notice thereof must be published once in the official journal or other newspaper published in said city at least one week before the final passage or adoption thereof. No franchise or right to occupy or use the streets, highways, bridges, or public places in any city shall be granted, renewed, or extended, except by ordinance, and every franchise or grant for interurban or street railways, gas or water works, electric lights or power plants, telegraph or telephone systems, or other public service utilities within said city, must be authorized or approved by a majority of the electors voting thereon at a special election called for that purpose by the council."

In paragraph 4 of section 14 of the same act it is provided that:

"Whenever any ordinance or proposition is required by this act to be submitted to the voters of the city at any election, the secretary shall cause such ordinance or proposition to be published in the official journal or other newspaper published in said city, such publication to be not more than twenty nor less than five days before the submission of such proposition or ordinance to be voted on."

We have held in this opinion that, in amending such a franchise, the same course had to be pursued as in granting one. We stated above that we would defer passing on the failure to give the notice that the ordinance was complete in the form in which it was expected to be passed, and was on file with the secretary for public inspection, as a ground for annulling the election, until we considered the same point in connection with the validity of the ordinance, since it is urged as a ground for annulling both the election and the ordinance.

It will be observed that the publications required in sections 10 and 14 are not the same publications, but are different ones. In the former it is only the notice that the ordinance is complete in the form in which it is intended to be passed, and is on file for public inspection, that must be given, and this must be done by publication at least one week before its final passage; while in the latter the proposition, or the ordinance itself, must be published, and this must be done not more than 20 nor less than 5 days before its submission. Both provisions as to publication apply to street railway franchises. The provision in section 10 does so, because such a franchise is one authorizing the use of the streets, and therefore, by the very terms of that provision, falls within it. The provision as to publication found in section 14 applies to such a franchise, because the franchise is one that section 10 requires to be submitted to the people. Both publications are manifestly essential to the validity of the grant. The language of the statute is clearly mandatory in that respect.

[12] In granting such a franchise, all conditions precedent prescribed by the statute must be fulfilled. 36 Cyc. pp. 1358 and

1359. The question therefore presents itself, at least in this case: When must the notice that the ordinance is on file for public inspection be given? We do not think it is necessary to give it before the election. Section 10 provides that it shall be given at least one week before final passage of the ordinance. It is not necessary to finally pass the ordinance before holding the election. All that section 10 requires in the way of approval by the people is, not that they enact the ordinance, but that they authorize or approve the franchise, or the renewal, or extension thereof, as the case may be. It is immaterial, therefore, whether this notice be given before or after the election. If the council should ask the people for their approval of an ordinance granting a franchise, which the council considered as finally passed, and if the required notice as to public inspection had not been first given, the approval would amount to nothing more, under the statute, than an authorization to pass it, and the council would have to give the notice, and then finally pass the ordinance. Under the statute either authority to pass the ordinance granting the franchise or an approval of it when passed is sufficient. Such being the case, the election should not be annulled, but the council should be permitted, if it see proper, to give the required notice, and to proceed on the authority granted in the election already held as if it had not as yet finally passed the ordinance.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled and set aside in so far as it annuls said election, which is hereby decreed to be valid; that in all other respects said judgment be affirmed, save and except that the mayor and city council of Shreveport be permitted, if they see proper, to give said required notice, and to proceed on the authority granted in said election as if they had not as yet finally passed said or-

dinance. It is further ordered that the appellee pay the costs of this appeal, and that the right be reserved to both sides to apply for a rehearing.

PROVOSTY, C. J., dissents.

LAND, J., recused.

ST. PAUL, J. I concur in the decree, and also in the opinion, except in so far as the latter may be construed to limit the right of action to electors or trace it to the provisions of the statute involved. I think that all who, by reason of permanent residence in a community, find themselves under the necessity of relying constantly on the public service corporations thereof to supply their needs have a right to resist any illegal charge attempted by these corporations. And the fact that payment is insisted upon in advance of the service does not alter the measure of their right.