ST. PAUL, J.
This case was submitted on briefs without oral argument, on June 28th, to be determined before adjournment (usually June 30th).
Plaintiffs, appellants, are seeking to set aside and declare null and void an election held on August 8, 1922, in Georgetown school district No. 16 of Grant, parish. They attack the legality of the election on the following grounds:
Eirst. That no resolution was ever adopted by the Grant Parish school board calling said election, except a verbal motion which did not contain and provide for the term of the bond issue, the rate of interest, the form of ballot, etc, as required by law.
Second. That the election was not legally held even if legally ordered, because the commissioners were not properly sworn, the polling places were not named, and the list of qualified electors was not furnished by the registrar of voters.
Third. The result of the election was not legally declared and has not yet been legally determined, because the returns of the election commissioners have never been convassed as provided by law.
Fourth. That the election was not carried by a majority in number and amount of those entitled to vote.
I.
[1,2] The first ground of attack involves only a question of fact. The trial judge who saw and heard the witnesses resolved the conflict of testimony in favor of de *246 fendants, and we think he resolved it correctly. Several witnesses for plaintiffs testify that only an oral motion was made and adopted to submit a proposition to issue $85,000 in bonds without any details. But the president, the secretary, and one other member of the board testify that the board had before it a written resolution every detail of which was gone over in a discussion which lasted some three or four hours, and which was finally adopted unanimously. They are .corroborated by the production of the original resolution, with the blanks filled out; by the transcript thereof in full in the minutes of the board; by those minutes having been published in full in the official journal a few days later; by those minutes having been approved without comment at the nest meeting of the board.
It is true that in that part of the original draft which relates to the form of the ballot there appears a clerical error in which the interest is mentioned at 10 per cent, and no term of years is mentioned. But this was corrected in the minutes to make that part correspond with the main part of the ordinance providing for a 10 years’ term and 5 per cent, interest; and the ballots were issued accordingly. But this is of no consequence, the statute (Act 46 of 1921, § 16) prescribes the form of ballot, and there was no need to include the details thereof in the ordinance (Act 46 of 1921, § 4). And the yery fact that the original draft was produced with this clerical error is very convincing that there was no attempt at fraud or concealment in connection therewith.
Capps v. Parish Board of School Directors, 138 La. 348, 70 South. 322, has no application. That case does not decide that the form of ballot must be included in the resolution calling the election, but it does decide that, when it is given and the notice of election based thereon is misleading, the election is not valid. But such is not the case here; the proclamation calling the election was in accord with the resolution. Tr. 137.
We think the election was properly called.
II.
[3] There is no more merit In the second ground of attack: (1) That the commissioners were not properly sworn. They were sworn by a deputy sheriff instead of by the clerk. The failure of the commissioners to take an oath before the proper officer, or to take one at all, will not vitiate an election; it is a mere irregularity. Long v. Shreveport, 151 La. 423, 435, 91 South. 825. The election laws of the state must, of course, be observed with sonie degree of reasonableness; but it was never in contemplation that the carelessness or ignorance of election officials should afford the means of defeating the will of the people in the exercise of their highest prerogative. Hence:
“Irregularities in the conduct of a primary election such as the failure of election officers to sign or forward a particular document in a particular manner, or * * * provide * * * a booth of particular dimensions, particularly situated, or constructed of particular material, but not preventing a free and honest expression of the will of the voters, will not affect the validity of a nomination made at the election.” Andrews v. Blackman, 131 La. 355, 59 South. 769.
“This is in accord with the general rule, supported by abundant authority, * * * that, where the electors have had a fair and free opportunity to express their will at the polls, arid have done so, the result of their choice will not be set aside because of the failure of some ministerial officer to perform some duty imposed upon him by law, or in the manner prescribed for his guidance.” Vidrine v. Eldred, 153 La. 779, 96 South. 566.
It is argued that this rule has no application to elections involving the imposition of special taxes, and we are referred to Gewin v. Police Jury, 130 La. 417, 58 South. 132, as holding that in such cases there must be a strict compliance with the provi *248 sions of tlie law. Rut that expression is taken from the syllabus to the opinion; in the body of the opinion it is said that what is required is that a reasonable compliance with the law be observed.
We are of opinion that, in the absence of fraud, the will of the voters was quite as well expressed, where the commissioners were sworn by a deputy sheriff, as it would have been.had the commissioners been sworn by the clerk or by each other.
[4] (2) That the polling places were not named. In the proclamation of election the polling places are given as Rochelle, Selma, and Linceeum. We assume that these are small settlements, and that those best acquainted with local conditions knew that such designations would suffice to inform the voters where to cast their ballots. There is nothing in the statute which requires the authorities to name the particular house or lot in which the booths will be placed. What might be necessary in a large city might be Wholly superfluous in a sparsely settled community. Suffice it to say that there is no evidence in this record tending to show that anyone failed to find the polling booth or was thereby deprived of his vote. On the contrary the evidence shows that all voted who wanted to do so.
Again, Capps v. Parish Board of School Directors, 138 La. 348, 70 South. 322, is not applicable. That case does not decide that it is necessary to name some particular house as the “polling place.” It does hold that where the notice of election does not designate any polling place at all, and “the voters were left to find the polling place as best they could,” the election would be annulled. Such is not the ease here; the notice designated, as the polling places Rochelle, Selma, and Linceeum; places doubtless well known to the residents of the district in which the election was held, and apparently no one experienced any difficulty either in finding them or in voting.
[5] (3) That ’ the list of qualified voters was not furnished by the registrar of voters. The evidence shows the list of registered voters was made up by the registrar of voters herself. She testifies that the copies of the assessment rolls, showing the property qualifications - of the voters, were made out by her direction and under her eyes. These were the copies which were sent to the polls and used in the conduct of the election. It is not pretended that they were not correct in every detail, and we are at a loss to understand what more could have been asked of her. It is true that they were signed by the person employed by her to make them out, and whom she had appointed “deputy registrar.” But, pretermitting the question whether or not there is such an office as deputy registrar, #e find nothing in the law which requires the registrar to sign the list of taxpayers. The law says simply that the registrar shall furnish such a list. Act 46 of 1921, § 14. And in any event said act and section now provide that—
“No defect or irregularity in or omission from the list of voters furnished by the registrar of voters hereunder, shall affect the validity of the election, unless it be established that voters were thereby deprived of votes sufficient in number and amount to have changed the result of the election.”
This clause was not contained in the act of 1910 (No. 256), but has been added, and' therefore the ruling in Elkins v. Board of School Directors, 138 La. 207, 70 South. 99, is not applicable. The same thing may be said of Cain v. Vernon Parish School Board, 142 La. 744, 77 South. 584. And incidentally it may be said of this last case (in connection with point No. 2 of this paragraph) that it intimates that the mere failure of commissioner’s of election to take an oath would not alone suffice to annul the election.
III.
[6] It is urged that the returns were not canvassed and promulgated as required by *249 sections 22 and' 23 of Act 46 of 1921. The facts are that, on the day fixed for the public canvass of the returns, “the board met and received the returns from the commissioners, examined the result as declared by the commissioners, considered objections that had been made to several ballots; and the secretary, or some other member of the board, made an addition of the votes cast for and against, showing the result to be in favor of the election; after which some member moved that the election be carried,” which was adopted.
We think this was a substantial, if- not full, compliance with the requirements of the act. True, the formal process verbal was not executed at that time; but this was done 14 dáys later and duly published as required by law. We think the delay was immaterial; many acts are directed by law to be done within a certain time, and yet if not done at that time may be-done after-wards. For instance the state is not to lose its taxes because the assessors do not complete their rolls on or before the day fixed by statute. In general, laws diz-ecting public officials to do certain things within a certain time are merely directory, and are not to be construed as forbidding the doing of the act afterwards, if such act may still be done as well afterwards as before. We do not think the law contemplated that the board might annul the result of the election by its subsequent failure to perform some ministerial act in connection therewith. Mandamus would surely lie to compel them to perform such duty, and, since the mandamus would lie only after the failure to perform within the time stated, it follows that performance within that time is not of the essence of the act.
IV.
The claim that the election was not carried by a majority in number and amount is not well founded. The majority in favor of the tax was 75 in number and $17,844 in amount.
Plaintiffs challenge 11 votes cast in favor of the tax, and claim 3 votes against the tax' which were not received or counted. In the matter of numbers, the' result could not be changed even if plaintiffs were allowed all they claim.
[7] In the matter of amount of the votes challenged, Gannon did not vote at all. G. L. Coburn’s vote was properly counted, because his vote was properly signed by another in his pz-esence, he not knowing how to sign. The following votes were also properly counted, they being admittedly registered voters and taxpayers, to wit: W. B. Corley, W. F. Corley, A. A. Willet, O. L. White, Marshal Reauban, A. H. Barrett, and Carl W. Smith.
[8] The votes of John W. Roberts ($250) and M. C. Stark ($50) should not have been counted, they having sold their property before the election. This reduces the amount in favor of the tax by $300, leaving the majority only $17,544.
The votes of W. M. Tully, J. L. Holmes, and J. T. Wooten, opposed to the tax, would not have changed the result, as they aggregated only $9,840. It is therefore unnecessary to decide whether their votes were properly rejected or not counted.
Decree.
The judgment appealed from is therefore affinned.