SARTAIN, Judge.
Plaintiffs as residents, property owners and registered voters of the City of Houma, Parish of Terrebonne, Louisiana, instituted this suit to set aside and nullify an election of the registered property owners of the City of Houma which favorably authorized the issuance of $10,000,000.00 of municipal revenue bonds. Plaintiffs now prosecute this appeal from a judgment of the district court which denied their demands on each issue and upheld the validity of the election.
This case was very ably tried in the court a quo and we are favored with detailed written reasons of the trial judge.
Plaintiffs attack the validity of the election on the following grounds:
I.That the election was called without first obtaining the approval of the State Bond and Tax Board as required by LRS 47:1804.
II. That the City failed to submit to the voters more than a single proposition; that, in effect, the City failed to show the breakdown of the proposed expenditure of the bond proceeds for its combined electric light and power plant system, water supply purification and distribution plant system and natural gas system as required by LRS 39:511.
III. That the amount to be paid as attorneys’ fees in connection with the bond issue was never properly submitted to the State Bond and Tax Board as required by Senate Concurrent Resolution No. 23 of 1964.
IV. That the statutes under which the election was conducted and which require that the name of the voter be written on the ballot, particularly LRS 39:413-512 are violative of Article VIII, § 15 of the Louisiana Constitution of 1921 and deprived petitioners of their right to secrecy of the ballot; that said statutes are also violative of the Fourteenth Amendment of the United States Constitution and of Article I, § 2 of the Louisiana Constitution in that they deprived petitioners of the equal protection of the laws.
V.That LRS 33:4253, authority for the subject election, is unconstitutional because said statute provides that the bonds be secured by a pledge of the utility revenues, whereas Louisiana Constitution, Article XIV, § 14 (m) provides that such bonds be secured by both pledge of the revenues and a mortgage on the lands, buildings, machinery and equipment of the utility.
We shall discuss these points in the order mentioned.
The City of Houma operates a combined utility providing electric power, water, and natural gas. The purpose of the revenue bond election was to extend these services into additional areas of the city.
On September 12, 1967, the Mayor and Board of Aldermen adopted a resolution ordering and calling a special election to be held on October 24, 1967. The election was held as scheduled. The promulgated results revealed that 1,828 votes were cast in favor of the proposition submitted representing an assessed valuation of $2,736,258.00 and 896 votes were cast against the proposition representing an assessed valuation of $1,108,-268.00. Accordingly, there was a majority of 936 votes in number representing an assessed valuation of $1,627,990.00 cast in favor of the proposition. The proposition submitted to and approved by the voters of the City of Houma was as follows:
PROPOSITION
“Shall the City of Houma, State of Louisiana, issue its revenue bonds to the *579 amount of Ten Million Dollars ($10,000,-000.00), to run twenty-five (25) years from date thereof, with interest at a rate not exceeding six per centum (6%) per annum, for the purpose of constructing and acquiring extensions and improvements to the combined electric light and power plant system, water supply purification and distribution plant system and natural gas system of said City, said bonds to be payable as to principal and interest solely from the income and revenues to be derived from the' operation of said combined utility, pursuant to the provisions of Sub-Part C, Part I, Chapter 10, Title 33 of the Louisiana Revised Statutes of 1950?”
I
L.R.S. 47:1804 provides as follows:
“Hereafter, before incurring any debt, ordering any election, submitting any proposition to incur any debt or to levy any special tax, borrowing any money for any purpose whatever, issuing any bonds or other evidences whatever of debt, levying any tax or pledging any tax or revenue or income for t.he payment of any such bonds or debt, where they are authorized so to do by the constitution and the laws of this state, every such governmental agency of the State of Louisiana named in R.S. 47:1803 shall obtain the consent and approval of the board.” (Emphasis ours)
The undisputed facts are that the proposition was adopted on September 12, 1967 and was submitted to the State Bond and Tax Board for approval by the attorneys for the City by letter dated September 25, 1967. The resolution setting forth the above quoted proposition also provided:
“SECTION 1. The subject to the approval of the State Bond and Tax Board and under the authority conferred by Part 2, Chapter 4, Title 39 and Sub-Part C, Part 1 of Chapter 10, Title 33 of the Louisiana Revised Statutes of 1950, and other constitutional and statutory authorities supplemental thereto, a special election be and the same is hereby called and ordered to be held in the City of Houma, State of Louisiana, on Tuesday, October 24, 1967, between the hours of six (6:00) o’clock a. m. and eight (8:00) o’clock p. m., in compliance with the provisions of Section 1181 of Title 18 of the Louisiana Revised Statutes of 1950 (R.S. 18:1181), and that at the said election there shall be submitted to the resident property taxpayers of said City qualified and entitled to vote at said election under the Constitution and Laws of this State, the following proposition, to-wit:” (Emphasis ours)
The Board at its regular meeting on October 4, 1967 unanimously adopted a resolution approving the calling of the said election.
Plaintiffs contend that L.R.S. 47:1804 requires that approval of the Board be obtained before ordering any election and that since the resolution of September 12, 1967, calling for the election was prior to its formal submission to the Board, the election is therefore null.
The defendant, City of Houma, contends that the call was “subject to the approval” of the Board which is not prohibited by L.R.S. 47:1804 and inasmuch as formal approval was obtained prior to the election itself that the basic requirements of the statute were satisfied.
We quote with approval from the trial judge’s written reasons, to-wit:
“There can be no doubt as to the meaning of the word ‘before’ and the Court finds no difficulty in determining that ‘ordering’ an election is synonymous with ‘calling’ an election. In fact, in the resolution of the city, the election is both ‘called and ordered’ (exhibits P-2 and D-5).
“That t.he call was issued before obtaining the approval of the Board is not in strict compliance with the statute; but in view of the conditional nature of the call, *580 i. e., ‘subject to the approval of the State Bond and Tax Board’ etc., is such deviation sufficient to invalidate the election? We think it is not.
“Though Mr. Joseph P. Lancaster, legislative auditor of the State of Louisiana and ex-officio member of the State Bond and Tax Board testified (Tr. p. 133) that most applications recite the phrase ‘subject to the approval * * * ’ and that the form of resolution used in the City was the ‘usual’ form used, we may not here apply the doctrine of ‘contemporaneous construction.’ The jurisprudence, though recognizing and applying the doctrine under proper circumstances (See Delta Life Ins. Co. v. Martin, [La.App.,] 59 So.2d 465; Hester v. La. Tax Commission, 227 La. 1022, 81 So.2d 381 at p. 386), has limited its application by this language in State Licensing Board for Contractors v. State Civil Service Commission [La.App.,] 110 So.2d 847 at page 850:
‘The suggestion of appellants that weight should be given to the contemporaneous construction of the act by the Contractors’ Board (which considered itself legislatively exempted from civil service) overlooks that while contemporaneous construction by governmental agencies charged with administering a statute may furnish the courts a guide to interpretation when the statutory meaning is unclear, nevertheless contemporaneous administrative construction cannot be determinative as to the effect of unambiguous legislation such as we hold the present to be. Roberts v. City of Baton Rouge, La.Sup. [236 La. 521], 108 So.2d 111; State v. U-Drive Car Co., La.App., Orleans, 79 So.2d 690 [590], certiorari denied.’ (Emphasis supplied)
“We find no ambiguity in the statute, but find that the City’s lack of strict and technical compliance therewith is not sufficient grounds, in light of the jurisprudence, to invalidate and nullify the election. In Johnson v. Sewerage District, 239 La. 840, 120 So.2d 262, at page 271, the Supreme Court of Louisiana states: ‘It has frequently been observed by us that in the absence of fraud, corruption or proof that the irregularities complained of would have changed the result of the election, the election will not be set aside solely because of the failure of some ministerial officer to perform every formal direction prescribed by law. Duncan v. Vernon Parish School Board, 226 La. 379, 76 So.2d 403 (and cases cited therein).
‘In the case of Bradford v. Grant Parish School Board, 154 La. 242, 97 So. 430, 431, in which the court disposed of a multitude of alleged irregularities ranging from the swearing in of commissioners to the canvassing of the returns, we said :
‘The election laws of the state must, of course, be observed with some degree of reasonableness; but it was never in contemplation that the carelessness or ignorance of election officials should afford the means of defeating the will of the people in the exercise of their highest prerogative.’
“To the same effect was this pronouncement in Patterson v. City of DeRidder, 235 La. 140, 103 So.2d 68 at page 70:
‘ * * * the exception must be maintained under the well established jurisprudence to the effect that a special tax election will not be annulled for infor-malities or irregularities where fraud, corruption and force are not charged and there are no allegations predicated upon particularized specifications of fact evidencing that, by reason of such informalities and irregularities, the people were deprived of votes sufficient in number and amount to have changed the result of the election. See, Bradford v. Grant Parish School Board, 154 La. 242, 97 So. 430; Heine v. Jefferson Davis Parish Police Jury, 172 La. 889, 135 So. 667; McCann v. Mayor and Councilmen, 173 La. 1063, 139 So. 481; Woulfe v. Morrison, 212 La. 1032, 34 So.2d 251; Blanch *581 ard v. Iberville Parish School Board, 218 La. 784, 51 So.2d 70; Daigle v. Mayor and Board of Aldermen, 222 La. 556, 62 So.2d 833; Duncan v. Vernon Parish School Board, 226 La. 379, 76 So.2d 403; Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So.2d 755, No. 44,006 on our docket, t.he decree in which was handed down March 20, 1958, and the authorities therein cited. The underlying basis for this rule is the . court’s reluctance to nullify the will of a majority of the people where all have had a free and unimpeded opportunity to express their wishes at the polls.’
“In view of the foregoing, we must reject plaintiffs’ first objection.”
II
Plaintiffs’ second objection is directed to defendant’s alleged failure to follow the requirements of L.R.S. 39:511 which requires that if more than one proposition is submitted at t.he same special election, each proposition shall be so submitted as to enable the voter to vote separately thereon. The statute further provides a suggested form. It is noted that one form is “A. For the incurring of bonded indebtedness” and another form “B. For the levying of a tax”.
In pre-election publicity and during the promotional phases of the campaign and in a news release the city itemized the expenditures as follows:
“1. New 26,000 KW Addition to Steam Electric Generating Station $ 5,085,000
2. Additions to Electric Distribution & Transmission System $ 715,000
3. Water Storage, transmission & distribution system $ 1,620,000
$ 7,420,000
4. Remainder Reserved for Utility Expansion $ 2,580,000
$10,000,000”
It is also noted that the proposition submitted to the voters provided for the issuance of $10,000,000.00 of revenue bonds “for the purpose of constructing and acquiring extensions and improvements to the combined electric light and power system, water supply purification and distribution plant system and natural go's system of said city.” Plaintiffs urge that defendant’s failure to itemize the proposed expenditures so as to present four separate proposals aggregating $10,000,000.00 vitiates the election.
The trial judge resolved this issue against plaintiffs and properly held that the Mayor and Aldermen of the City were interrogated at length concerning the proposed, expenditures and admitted freely that the item for utility expansion included expenditure for acquisition of customers presently being served by another utility company and public water works within the corporate limits of Houma. The judge further held that the record clearly indicated that the City considered its various services as a single combined utility. We again quote with approval from his opinion:
“We find the issue resolved by the Louisiana jurisprudence embodied in Holt v. Vernon Parish School Board, 217 La. 1, 45 So.2d 745, wherein Plaintiff attacked a bond issue election, in which the proposition submitted was ‘for the purpose of constructing and equipping a gymnasium auditorium, lunch room and repairing present school buildings * * *’ Plaintiff’s argument, in that case as here, was that several different projects were submitted in the single proposition. (The election was held under the authority of Act 6 of the Extra session of 1940, which included a provision for *582 separate propositions identical with R.S. 39:511)
“The Court stated: (45 So.2d 745, at p. 746)
‘The purpose of this election was to make improvements on this school unit in order that it might comply with modern standards. The mere fact that the improvements are detailed in the proposition does not create separate objects. We cannot agree with the plaintiffs that three different projects were to be voted on at this election. A bond issue could be presented as one proposition if it was for the purpose of constructing the school unit as a whole and we see no reason why a proposition could not be submitted to the voters for the improvement of this unit without affording an opportunity to vote separately on each item of improvement.
‘It appears that the test recognized by the jurisprudence of this state and other states is whether or not there exists a natural relationship between the structures or objects to be united in one proposition and a large discretion is vested in the courts in determining the relationship existing between the structures and. objects. If there exists a natural relationship between the structures or objects it can be submitted in one proposition. In 4 A.L.R.2d page 621 this general rule or test is very well stated and many cases cited in support of it. See also 18 Am.Jur. page 299, para. 181, Verbo Elections—“Separation of Propositions”: 43 Am.Jur. page 345, para. 92, Verbo Public Securities and Obligations; 19 Ruling Case Law, page 999, Verbo Municipal Corporations, and the many cases referred to.
‘In the case of Gisclard v. City of Donaldsonville, 159 La. 738, 106 So. 287, the contention was urged that the electric light plant was being hypothecated for the purpose of extending and improving the waterworks system by the construction and acquisition of a water filtration plant. It was pointed out therein that the waterworks and electric light plant was regarded as one utility because it was being operated as such.
‘In the case of McCann v. Mayor and Councilmen of Morgan City, 173 La. 1063, 139 So. 481, 482 the election was held to determine whether bonds should issue for the purpose “of constructions, extensions, and improvements of the present municipal waterworks plant and system, so as to constitute a combined or single water, electric light, and power plant, and thereby furnish a more efficient service at less operating cost.” It was urged in that case that the existing utility was being hypothecated for the benefit of another separate and distinct utility. The court relying on the holding in the Gisclard case rejected this contention.
‘The school at Evans is undoubtedly being operated as one unit and there exists a decided natural relationship between the items of improvements recited in the proposition. The recital of these improvements does not create separate objects and they may be submitted as one proposition.’
“There is nothing in the record to persuade this Court that no natural relationship exists among the objects united in the single proposition presented in the election. We believe that such natural relationship exists and could be submitted to the voters as one proposition.”
See also Humphreys et al. v. City of Jennings, 185 La. 814, 171 So. 41 (1936).
Ill
Plaintiffs contend that defendant did not comply with Senate Concurrent Resolution No. 23 of 1964 which resolution “requests the State Bond and Tax Board to refuse to grant to any public body the right to borrow money through the issuance of bonds, etc., unless the application for permission to exercise such right be accompanied by a statement showing the amount to be paid as attorney’s fees and *583 further that the Board determine that the fees to be charged are fair and reasonable for the services to be rendered.” The trial judge rejected this complaint and we think properly so. There is contained in the record a resolution of the Mayor and Board of Aldermen dated June 10, 1964 whereby Ted Borowski and John W. Cox, “bond attorney”, were retained to handle all work of a “legal and financial nature in connection with the authorization, issuance, sale, delivery, and approval of new revenue bonds of said City * * *” This resolution provides that the compensation of the attorneys shall be V% of the principal amount of any bonds actually issued, sold, delivered and paid for. The resolution further specifies what shall be included in the attorney’s services. This resolution was in effect at the time the subject bond issue was called. Also contained in the record is the letter dated September 25, 1967 on the letterhead of these attorneys, transmitting to the State Bond and Tax Board' on behalf of the City of Houma, the resolution calling for the special election and permission and authority to issue the bonds if the election carried. The letter also sets out that the legal fees to be charged will be similar to those in previous revenue bond elections of this city and will not exceed 1% of the bonds actually issued, sold, delivered and paid for. This information was in the hands of the State Bond and Tax Board on October 4, 1965 when it approved the election and it must be assumed that the Board also approved the attorneys’ fees. The record certainly contains no evidence to the contrary and the Board must be deemed as considering the attorneys’ fees fair and reasonable.
IV
 Plaintiffs next contend that L.R.S. 39:511 and 512 which provide a place on the ballot for the signature of the voter and further requires that the name of the voter be written on the ballot are violative of Louisiana Constitution Article VIII, § 15 which prescribes the types of ballots, methods of voting, voting machines, and with respect to secrecy states:
* * * * . * *
“The Legislature shall provide some plan by which the voters may prepare their ballots in secrecy at the polls. This section shall not be construed so as to prevent the names of independent candidates from being printed on the ballots with a device; the names of candidates may be written on the ballot. These provisions shall not apply to elections for the imposition of special taxes, for which the Legislature shall provide special laws.”
‡ * * * * ‡
In disposing of this contention adverse to plaintiffs the trial judge correctly stated:
“La.Const. Art. VIII, Sec. 15 concerns itself with the election of public officials as is evident from its reference to elections by the people of ‘candidates of each political party;’ the ‘entire or straight party ticket’; its provisions pertaining to write-in candidates; its instructions for dispensing with the holding of a general election; and the certification of a candidate as the ‘choice of the people and duly elected to said office.’ ”
‡ ‡ * ‡ ‡
“It must be admitted that a revenue bond election is not identical with an election ‘for the imposition of special taxes.’ It is likewise not an election of public officials. Consequently, the most that can be said legalistically is that Louisiana Constitution Art. VIII, Sec. 15, has no application to revenue bond elections such as the one here at issue, and there is no constitutional prohibition against signing the ballot in such election. It should be noted here, however, that revenue bond elections are authorized by the Louisiana Constitution in Art. 14, Sec. 15 which will be discussed later herein.
“Plaintiffs also contend that they were deprived of constitutionally guaranteed secrecy of the ballot by the fact that the election authorities provided no place *584 where the ballots could be marked in secret — that bystanders, other voters, and the Commissioners could have watched and seen the marking of the ballots. Nothing in the testimony indicates that plaintiffs were prevented from marking their ballots secretly or that they could not have done so, though it might have entailed some inconvenience since no enclosed booth was provided. However, in view of our previous conclusion, the only provision of law pertaining to secrecy in revenue bond elections is that found in R.S. 39:512 which gives the voter the right to fold his ballot so that it shall not be known whether he voted for or against the proposition. It is our conclusion that plaintiffs have not been deprived of any right to secrecy of the ballot.”
Plaintiffs further contend that they have been deprived of their constitutional right to equal protection of the laws as required by the Fourteenth Amendment of the United States Constitution and Article I, § 2 of the Louisiana Constitution. In support of this argument, they sought to prove by the testimony of Mr. Alden W. Muller, 1st Assistant City Attorney of the City of New Orleans, that similar elections conducted in the City of New Orleans employed the use of voting machines and did not require the signature of voters. Thus they argue that this same procedure should be accorded voters elsewhere, particularly voters in the instant election. Under cross examination, Mr. Muller testified that the New Orleans elections he had reference to were not revenue bond elections such as the one under consideration here and that they were conducted under provisions of law pertaining only to the City of New Orleans. Mr. Muller specifically admitted that New Orleans has never called an election under Sub-Part C, Chapter 10 of Title 33 of the Louisiana Revised Statutes nor to his knowledge has the city ever had any election on revenue bonds. A perusal of Article 14 of the Louisiana Constitution of 1921 as amended (Parochial and Municipal Affairs) readily discloses that the Parish of Orleans is excluded from many of its sections. The same article also limits many of its sections just as the City of New Orleans. To name a few reference is made to Sections 23.2 through 24.22, and Sections 25 through 28. It is readily admitted that these sections pertaining specifically to the City of New Orleans were deemed necessary because of conditions that did not necessarily exist in the remaining portions of the state. However, our statutes are replete with the phrase “The Parish of Orleans excepted”. The statutory and constitutional distinction between the Parish of Orleans and the remainder of the state (county parishes) is one that has been made from time immemorial.
The arguments advanced by plaintiffs must be rejected because the elections in New Orleans and in the City of Houma are conducted under different statutory provisions which provisions have been clearly authorized by the Constitution. L.R.S. 39:-511 and 512 were adopted pursuant to constitutional mandate. That there is a difference addresses itself more to the legislature and the people for an amendment to the constitution. The differences that now exist in the voting procedures find their origin in our constitution which is a clear expression of the people of this state who voted for and ratified the same. Further, we do not find these differences prohibited by the Fourteenth Amendment of the United States Constitution.
V
 The last contention of plaintiffs is that Louisiana Constitution Article XIV, § 14(m) provides that bonds such as those contemplated by the subject election are to be “ * * * secured exclusively, principal and interest, by mortgage on the lands, buildings, machinery and equipment and by pledge of the income and revenues of such public utility * * * ” L.R.S. 33:4253 provides that the bonds shall be secured by “ * * * the pledge of the revenues derived from the operation of the utility * * * ” *585 Thus plaintiffs contend that inasmuch as L.R.S. 33:4253 includes only the pledge of the revenues and not also a mortgage on the lands, buildings, machinery and equipment of the public utility, that the said statute fails to comply with the constitutional requirement and is therefore invalid.
We agree with the trial judge, the case of Stovall v. City of Monroe, 199 La. 195, 5 So.2d 547 (1941) is clearly dispositive of this issue. There the court stated:
“The Legislature under our law is empowered to pass any law not prohibited by the Federal and State Constitutions.
From a reading of this Section of the Constitution it appears that it was intended merely as a special provision for the floating of bonds for the purpose of raising revenues to extend and improve revenue producing public utilities and not as a general limitation upon the action of the Legislature in the future. It merely provides one method by which the utilities may be improved, but does not indicate that this is the exclusive method.
Moreover, if the authority for Act 251 of 1940 must be derived from this Section of the Constitution the Act is not inconsistent with it. The Act follows the Article of the Constitution except part of the security is omitted and certificates are to be issued rather than bonds. If the Legislature wishes to limit the amount of the security and provide for a pledge of the revenues without a mortgage on the properties it would not violate the Constitutional provision. The only persons that could be affected would be the holders of the certificates and they are making no complaint. The Act would not be unconstitutional because it does not improve the greatest burden provided for in the Constitution. The greater includes the lesser and the securities involved herein are within the constitutional provision.”
Stovall v. City of Monroe, supra, was also cited with approval in LeBlanc v. Police Jury of Rapides, La.App., 188 So.2d 131, 140.
A considerable portion of the testimony in this record representing a major contention on the part of plaintiffs pertains to the action of the Mayor and certain Aldermen relative to the “promotional” aspects of the election. Plaintiffs contend that the Mayor exerted his influence and prevailed upon certain members of the Police Department of the City of Houma to actively solicit votes in support of the proposition. There is no question but that certain policemen did in fact solicit votes during duty hours, that they were reimbursed for “gas expense”, and that certain police officers were in fact paid overtime out of city funds. While this type of conduct may well direct itself to other charges they do not in our opinion constitute sufficient grounds to seriously consider the nullification of the election itself. There is not one scintilla of evidence in the record to support a finding that any voters were coerced into voting contrary to their individual wishes.
Nevertheless, plaintiffs strenuously urge that all of the aforementioned irregularities are so numerous and of such serious nature as to deprive the voters of the free expression of their will and that the entire election should be declared null and void. The record does not warrant this action. The result of the election was 2 to 1 in favor of the proposition. Assuming arguendo that the cumulative effect of the irregularities complained of are serious such in our opinion would not change the result.
In passing on these assertions we must note that plaintiffs have not alleged fraud, corruption or proof that the irregularities complained of could have changed the result of the election. There have been many cases presented to our Supreme Court attacking elections or challenging them for certain irregularities and from these cases have evolved a rule that our courts will not set aside an election solely because of *586 the failure of some ministerial officer to perform every formal direction prescribed by law. See McCann v. Mayor and Councilmen of Morgan City, 173 La. 1063, 139 So. 481 (1932); Patterson v. City of DeRidder, supra, and Johnson v. Sewerage District No. 2, supra.
Accordingly, for the above and foregoing reasons the judgment of the district court is affirmed at appellants’ cost.
Affirmed.